### 𝔛𝔦𝔠𝔥𝔪𝔬𝔫𝔡.

REID FOR, &C. V. FIELD.

MARCH 10th, 1887.

*Absent*—LEWIS, P.

1. CONTRACTS —*Breach—Substituted Performance —Subsequent .Note— Waiver.*—Where one who is entitled to strict performance of contract for delivery of a purchased article, at a given day, accepts at a later day a delivery of said article, as by substituted performance, and gives his note subsequently for the price, he must be held to have waived the original breach.

2. IDEM—*Plea—Demurrer.*—In such case, his plea to action on said note, setting up the original breach as his defence, is insufficient in law.

3 PRACTICE AT COMMON LAW.—In such case, in the lower court, the de- ·murrer to the present plea having been sustained, permission will be given to defendant to file a new plea.   *Cromer* v. *Cromer*, 29 Gratt. 280.

Error to judgment of circuit court of Culpeper county overruling the demurrer of the plaintiff to the defendant's special plea in the action at law, wherein Joseph Reid, who sued for the benefit of Ober & Son, was plaintiff, and H. S. Field was defendant. .

The action was debt, founded on a negotiable note in the words and figures following, to-wit :

"CULPEPER, VA., *Nov. 1st,* 1880.

" Twelve' months after date I promise to pay to Jos. Reid, or order, four hundred and seventy. $\frac{97}{100}$ dollars, without defalcation or discount, at banking-house of Rixey Bros. ; and it is agreed upon and specified by maker and en-

dorsers that the interest on this note shall be at the rate of six per cent. per annum from November, 1880, till paid ; and we the maker and endorsers of this note, hereby waive the benefit of all homestead and exemption laws as to this debt.

" H. S. FIELD."

The note was endorsed by Joseph Reid, the payee, to Ober & Son, and was sent to Rixey Bros. for collection ; and default in payment having been made, the note was protested for non-payment and suit brought thereon.   The declaration was in the usual form of a declaration in debt, to which no objection was made.   The cause was matured and the usual office judgment taken at rules; and at the November term, 1882, on the motion of the defendant, the office judgment entered against him at rules was set aside, and he pleaded *nil debit,* and issue was joined thereon, and the defendant had leave to plead specially, and the cause was continued to the next term.   And at the June term, 1883, the defendant filed his special plea of equitable set-off under the 5th section of ch. 168, Code 1873, substantially as follows, to-wit : " That the note sued on was for the price of ten tons of a certain manipulated fertilizer, known as ' Ober's A. A.,' agreed to be purchased by the defendant of the plaintiff, and of which the said Ober & Son were the manipulators, in the city of Baltimore."   And the plea avers that the fertilizer so agreed to be purchased by the defendant of the plaintiff was sold by the plaintiff and bought by the defendant to be used in the seeding of the defendant's crop of wheat in the fall of 1880, and for no other purpose ; that the plaintiff agreed and undertook to deliver said fertilizer promptly to the railroad company, in the city of Baltimore, for transportation to the defendant on or before the 22d day of September, 1880; and that the prompt delivery of

said fertilizer for transportation to the defendant according to said agreement was known to be a matter of great and vital importance to the said defendant, and was of the very substance and essence of the said contract and agreement. And the said plea further avers that the plaintiff, not re-garding his said agreement, promise, and undertaking, did not deliver said fertilizer, the consideration of said note, to the said railroad company for transportation to the said defendant on or before the 22d day of September, 1880, so that the defendant could receive and use the same in seeding his crop of wheat in due and proper time, the pur-pose for which it was sold and purchased, but wholly failed so to do; by which failure the defendant was prevented from seeding his crop of wheat in due and proper time, and in consequence thereof his crop was greatly diminished and almost wholly destroyed, and thereby great damage and loss was sustained by the defendant; and the plea avers that by reason of the failure of the plaintiff to comply with their said contract, the defendant is damaged in a sum greater than the full amount of the note sued on, to-wit: in the sum of $500, which the defendant claims to set off against the plaintiff's said demand, &c.

The record discloses no other or further proceedings in the cause until the March term, 1885, when the defend-ant withdrew his plea of *nil debit*, and thereupon the plain-tiff demurred generally to the plaintiff's said special plea filed on the 5th of June, 1883, (in term,) and the de-fendant joined in the said demurrer; and the same being argued, it was considered by the court that the said demur-rer be, and it was overruled; and that the plaintiff take nothing by his suit, and that the defendant recover of the beneficial plaintiffs, the said Ober & Son, his costs, &c. And to this judgment a writ of error was allowed by one of the judges of this court.

*G. D. Gray,* for the plaintiff in error.

*D. A. Grimsley,* for the defendant in error.

RICHARDSON, J., (after stating the case), delivered the opinion of the court.

The sole question to be determined here is, did the circuit court err in its judgment overruling the plaintiff's demurrer to the defendant's said special plea? In order to a proper solution of this question, it becomes necessary to enquire into the sufficiency of the plea which was demurred to.

A *general* demurrer is one which excepts to the sufficiency of a previous pleading in general terms, without showing specifically the nature of the objection; and such demurrer is sufficient when the objection is on matter of substance. 1 Bouv. L. D. 458; Steph. Plead. 159; 1 Chitty Plead. 639. Such is the long established and universally recognized rule; and it is the rule expressly prescribed by our statute, (§ 31, ch. 167, Code 1873,) which declares that "the form of a demurrer or joinder shall be: 'The defendant (or plaintiff) says that the declaration (or plea, etc.) is not (or is) sufficient in law.'"

The effect of a demurrer is to admit the facts which are well pleaded. *Commercial Bank* v. *Buckner,* 20 How. 108. Or to state it differently, a demurrer admits all such matters of fact as are sufficiently pleaded. Bacon Abr. *Pleas,* N 3; Comyn's Dig. Pleader, A 5; 1 Bouv. L. D. 458. A demurrer is an allegation that, admitting the facts of the preceding pleading to be true as stated by the party making it, he has yet shown no cause why the party demurring should be compelled by the court to proceed further. And the import of the demurrer is that the objecting party will

not proceed, but will wait the judgment of the court whether he is bound so to do. Steph. Plead. 61.

Now, in the light of these well established principles, the sufficiency of the defendant's said special plea must be tested. The gravamen of the plea was the alleged breach of the contract by the plaintiff in failing to deliver promptly to the railroad company the ten tons of fertilizer, the consideration of the note sued on, to be transported to the defendant on or before the 22d day of September, 1880, according to his agreement and undertaking, such prompt delivery being of the substance and essence of the agreement, by reason of which failure, it is alleged, the defendant was prevented from receiving and using said fertilizer in seeding his crop of wheat in the fall of 1880, the purpose for which it was sold and bought, in due and proper time, whereby the defendant's said crop was greatly diminished, and damage was thereby sustained by him in the sum of $500, which sum exceeds the amount of the note sued on, &c.

Conceding as true the averment in the plea that the plaintiff contracted to deliver said quantity of said fertilizer to the railroad company in Baltimore, for transportation to the defendant, on or before the 22d day of September, 1880, this, without more, and in the absence of anything amounting to a waiver on the part of the defendant of his right to have of the plaintiff a strict compliance with the terms of the contract, or else to be absolved from the obligation thereof, would undoubtedly present a case in which prompt delivery was a material feature, and in which the time of delivery was of the substance and essence of the contract, because expressly stipulated for by the contracting parties. But such is not the whole case presented by the plea; for while it is averred therein that said fertilizer was sold and bought to be used in seeding the

defendant's crop of wheat in the fall of 1880, and for no other purpose; that the plaintiff agreed and undertook to deliver the same promptly to the railroad company, for transportation to the defendant, on or before the 22d day of September, 1880; and that the plaintiff failed so to deliver, whereby the defendant was damaged, &c. The plea goes yet further and expressly avers that the note sued on was given for the said ten tons of fertilizer to be delivered for transportation to the defendant, on or before the 22d of September, 1880. Yet, when we come to examine the note sued on, we find that it was made on the 1st day of *November*, 1880, more than five weeks subsequent to the alleged breach of the contract by the plaintiff, by his failure to deliver for transportation to the defendant within the time specified.

Surely it cannot be said that these facts are well or sufficiently pleaded; for upon their face they are wholly insufficient for the purpose for which they were pleaded. In other words, and taken all together, the defendant, by his plea, virtually admitted that though he once had a com plete defence, he had waived it by accepting from the plaintiff a substituted performance, and by then, after the alleged breach, executing his note—the note sued on—for the said ten tons of fertilizer.

The stipulation in the original contract of sale and purchase, for performance by the plaintiff within the time specified, was in the nature of a condition precedent, and was made for the benefit and protection of the purchaser, the defendant in error here. He had the right to have preformance on the part of the seller according to the very terms of the contract. "The leading principle is that each and every stipulation which enters into the discription of that which is to be done or rendered, is equally material with every other, as tending to identify the subject-matter; and if any particular remains unfulfilled the

entire contract is broken, and the party in default will not only be liable in damages but may be precluded from enforcing the promises on the other side." Hare on Contracts, 570, and authorities there cited, and among them, *Lowber* v. *Bangs,* 2 Wall. 728, and *Filley* v. *Pope,* 115 U. S. 213. And such is the rule as regards either kind, quality, quantity, or time; and it matters not that the difference is slight, and will, in the opinion of the court or jury, have no injurious consequences, because every man is entitled to judge for himself in such matters, and a new contract should not be substituted for that which the parties made. Hare on Con. 463. Performance is, as the term implies, such a thorough fulfillment of a duty as puts an end to obligations by leaving nothing more to be done. The chief requisite consequently is that it shall be exact. The very terms of the agreement must be pursued, and if they are not the default cannot be excused on the ground that the difference is immaterial and occasions no appreciable injury. Ib. 569, and authorities cited.

Such, according to the case made by the plea, were the legal protections thrown around the defendant purchaser at the time of the alleged breach of the original contract by the seller, the plaintiff in error here; but instead of standing firmly on his ample legal defence, the defendant in error waived it by accepting a substituted performance and by his subsequent promise, the note sued on; and the suit was brought, and necessarily so, not on the original executory contract, but on the subsequent promise—the executed contract.

No authority is needed, says Mr. Benjamin, for the proposition that the party in whose favor the condition has been imposed may expressly waive it. Benj. on Sales, § 566. Hence it is a recognized principle that every one may waive a right intended for his own benefit, if it can be relinquished without detriment to the community at large.

" Although a man need not take less or other than he·
stipulated for, he is still free to choose, and the acceptance·
of a substituted performance will defeat the right to rely
on the breach as an entire failure of consideration, although
it will not preclude a claim for compensation for the dif-
ference between what is and what ought to have been per-
formed." Hare on Contracts, 620.

Hare says there are two grounds on which a contract
which failed in the first instance, or became invalid subse-
quently, may be confirmed by a promise.   One of these is
waiver, the other ratification.   Ratification is an adoption
of a contract made on our behalf by some one whom we
did not authorize, which relates back to the execution of
the contract and renders it obligatory from the outset.
Waiver is a renunciation of some rule which invalidates
the contract, but which, having been introduced for the
benefit of the contracting party, may be dispensed with at
his pleasure.   Hare on Con. 272.   Hence, when a party has
stipulated for a benefit, the enforcement or relinquishment
of which can affect him only, and is in no way prejudicial to
the community at large, he may, if the other party is in
default, by a subsequent promise waive a defence which
would otherwise be valid.

In the case here, the defendant in error, by his own show-
ing, after the alleged breach of the original agreement by
the plaintiff in error, by accepting a substituted perform-
ance and by his subsequent promise—the note sued on—
waived the protection given by the law, relinquished his
right to rely upon the rule provided for his protection, and
consequently stands precluded from his otherwise valid de-
fence thereunder.   Looking then, in the light of these well-
settled principles, to the case made by the defendant's
special plea, we fail to discover any legal ground upon
which the judgment of the court below can be sustained.
The plea was clearly insufficient and demurrable, and instead

of overruling the plaintiff's demurrer to said plea and giving judgment for the defendant, the circuit court should have sustained the demurrer and given judgment for the plaintiff for the debt in the declaration mentioned, unless the defendant had withdrawn his said plea and asked to plead a sufficient plea in lieu thereof, which, if asked, should have been granted.

The plea was open to other objections, such as vagueness and uncertainty, but in the view already expressed these need not be noticed. It is, however, proper to add that the section under which the plea was offered requires every such plea to be verified by affidavit. No affidavit, so far as shown by the record, accompanied the plea. This alone made the plea inadmissible; but the plea was, for the reasons first stated, wholly insufficient and could not have been cured by the required affidavit.

The judgment of the circuit court must be reversed and annulled. And under the authority of *Creel* v. *Brown*, 1 Rob. R. 265; *Strange* v. *Floyd*, 9 Gratt. 474; *Hamtramck* v. *Selden, Withers & Co.*, 12 Gratt. 32; and *Cromer* v. *Cromer's adm's*, 29 Gratt. 286; and, according to the settled practice of this court, this cause must be remanded to the said circuit court with directions to sustain the plaintiff's demurrer to the defendant's said special plea, and to render judgment in said action for the plaintiff, unless the defendant withdraws his said special plea, which he should be allowed to do, if he ask it, and file a sufficient plea in its stead; and upon the filing of such sufficient plea, if any such be filed, and issue joined thereon, that such issue and any other issues joined in said cause be tried in said circuit court, and that the cause be in other respect proceeded in according to the views herein expressed.

JUDGMENT REVERSED.