STATE OF MINNESOTA *vs.* J. E. SACKETT and others.

July 3, 1888.

Criminal Trial before Eleven Jurors—Constitution.—A defendant in a criminal action may, when permitted by the court, the state not objecting, consent to try his case before 11 jurors, and such trial is not unconstitutional.

Same—Appeal—Errors not Apparent on Record.—The charge as given in the trial court having been wholly omitted in the case as certified, and no part of the testimony having been presented, this court cannot consider errors alleged to have been committed in modifying some, and refusing others, of appellants' requests to charge.

Appeal by defendants from an order of the municipal court of Minneapolis, refusing a new trial.

*C. N. Hunt* and *Howard & Richardson,* for appellants.

*Moses E. Clapp,* Attorney General, and *F. F. Davis,* for the State.

COLLINS, J.    The defendants were charged with assault and battery, in the municipal court for the city of Minneapolis, and upon the first trial the jury disagreed.    Thereafter they waived a jury of 12, formally agreed to try the case before 11 qualified jurors, and upon this trial a conviction was had.    A motion for new trial having been denied, defendants appeal, presenting for our consideration the sole question of the regularity of the conviction by 11 jurors, which appellants insist is unconstitutional, notwithstanding the stipulation and waiver before mentioned.    The record fails to show why a jury of 11 was agreed upon, but there is enough about it to clearly indicate that it was through no omission or neglect of the state to furnish an impartial jury of 12 men, had defendants chosen to have had such, and that the agreement was wholly voluntary upon their part. As was said by Mr. Chief Justice Shaw, in *Com.* v. *Dailey,* 12 Cush. 80, in his clear and cogent opinion: "It is not a question here whether, under the constitution of the United States and of this and many other states, declaring the right of jury trial inviolate, there can be a jury legally constituted, within these constitutional provisions, otherwise than of twelve men; nor whether the court can au-

thoritatively order any other mode of trial, in cases civil or criminal; nor whether, in criminal cases, any distinction can be made between felony and misdemeanor; nor, indeed, whether it is competent for the legislature to provide by law for a jury of a smaller number than. twelve, or authorizing any other rule for governing their action than unanimity." For the purposes of this discussion, we assume that defendants were entitled to a jury of 12, and it is therefore unnecessary to distinguish between felonies and misdemeanors, as was done in *People* v. *Justices*, 74 N. Y. 406; *Tyra* v. *Commonwealth*, 2 Met. (Ky.) 1; *State* v. *Borowsky*, 11 Nev. 119; *State* v. *Cox*, 8 Ark. 436,. —although the distinction can easily be made.

The bill of rights (article 1 of our constitution) contains three sections, the fourth, sixth, and seventh, which are designed for the protection of the citizen accused of crime, and by means of which he is amply protected in his life, liberty, and property. These sections are familiar to all, and, with slight changes of phraseology, may be found in the federal constitution, as well as in those of the different states. No attempt has ever been made to give prominence to any one part of these sections over another part, nor has it ever been intimated that one could be infringed upon more than another. Each is an independent but absolute guaranty to those needing protection; and it is somewhat difficult to see why, if either of the enumerated rights. can be waived, all cannot be. The cases most largely relied upon in the books to sustain appellants' position are *Cancemi* v. *People*, 18 N. Y. 128, and *Hill* v. *People*, 16 Mich. 351. The argument presented, after calling attention to the vast distinction between civil actions and criminal prosecutions, is that the latter involve public wrongs, which affect "the whole community, considered as a community, in its social and aggregate capacity;" the object being. to prevent future offences. As they are not instituted to punish the guilty, and the penalties are not under the control of the accused,. he has no right, "by his own voluntary act, to surrender his liberty,. or part with his life." The state, the public, having an interest in the citizen, will not allow his life or his liberty to be forfeited without due process, and in a strictly constitutional manner, and therefore radical changes in the prominent provisions as to the organiza-

tion of legal tribunals, and the long-established modes of procedure, as prescribed by the constitution, cannot be recognized or permitted. That as a jury of exactly 12 men is the only tribunal provided by the constitution and the laws, no one has authority, nor can any person be allowed, to create any other.

This then being, in substance, the line of thought pursued, and more or less elaborated upon, by those who have had occasion to write upon the subject, it only remains for us to compare such reasoning with that found in the cases wherein a conclusion directly opposite has been reached. These are notably *Com.* v. *Dailey, supra,* and *State* v. *Kaufman,* 51 Iowa, 578, (2 N. W. Rep. 275,) in which it is said that, in criminal proceedings of all kinds, the defendants habitually waive some of their statutory and constitutional privileges; and it is pertinently asked upon what principle it can be tolerated as to one of these, and not as to all others, except it be a matter of jurisdiction. To be practical, suppose the accused foregoes a speedy or a public trial, or that he knowingly permits partial and prejudiced jurors to sit in judgment upon him, or that he expressly declines the process of the court by means of which his witnesses may be compelled to attend, or that he refuses to have counsel in his behalf, could it well be argued that he has relinquished rights which the constitution cannot permit the citizen to forfeit, and that it is not competent for a defendant, by waiver or stipulation, to thus deprive himself of any of these numerous safeguards? But it has been said that waiving a speedy trial, declining counsel, permitting incompetent and inadmissible testimony, or voluntarily becoming a witness against one's self, (all guarantied or inhibited by the constitution,) are departures only from modes and methods of trial, and do not bear upon the question of jurisdiction, as does a departure from the number so well settled as composing a common-law jury. This is true in some degree; but suppose a defendant, well knowing the facts, neglects to challenge a prejudiced juror, or a non-resident, or an alien, could it be successfully urged, upon motion in arrest of judgment, that his constitutional rights had been disregarded to his prejudice? No one would so contend, and yet the accused is guarantied 12 impartial jurors of the county or district in which the crime is committed. His

right to unprejudiced men is as sacred and probably more important than that there be precisely 12. By what process of reasoning can it be demonstrated that the common-law jury, reduced, through bias or incompetency, so that there are not 12 properly qualified, just, and unprejudiced minds in the box, is the tribunal assured the accused, and that a jury decreased in numbers is not? Competency and impartiality are as essential as any other quality upon criminal trials, unless we hold, as was said by another, that there is some magic in the number 12. The soundness of this position is made clearer by a brief consideration of *Hill* v. *People, supra.* An alien became a juror, the defendant having no knowledge of the fact. Conviction followed, and upon appeal the court held that the defendant was entitled to a new trial because he had not been furnished the tribunal secured him by the constitution. That would be equally true if the accused, advised of the incompetency of the juror, had acquiesced in his selection. And yet would the court have relieved the defendant from the effect of his own misconduct, thus permitting him to trifle with a constitutional right, shielding himself behind a verdict in his favor should he be again in jeopardy, and at the same time in position to assert error in case of conviction? We think not.

To meet another position which has been taken we can do no better than to again quote from *Com.* v. *Dailey:* "But it is asked, if consent will authorize a trial before eleven jurors, why not before ten, or six, or one? It appears to us that it is a good answer to say that no departure from established forms of trial in criminal cases can take place without permission of the judge, and no discreet judge would permit any such extravagant or wide departure from these salutary forms as the question supposes, nor any departure, unless upon some unforeseen or urgent exigency." The wise and beneficent provisions found in the constitution and statutes, designed for the welfare and protection of the accused, may be waived, in matters of form and substance, when jurisdiction has been acquired, and within such limits as the trial court, exercising a sound discretion in behalf of those before it, may permit. The defendants, having formally waived a juror, and stipulated to try their case with 11, cannot now claim that there was a fatal irregularity in their trial.

To the court below appellants presented three requests to charge: one upon the subject of reasonable doubt, which was modified; the other two referring, possibly, to some matters of testimony. These were refused. The charge as given is not before us, nor is any part of the testimony. We cannot assume that the court did not charge fully and properly upon reasonable doubt; nor have we any means of determining the pertinency of the requests (which were refused) to the facts as then before the jury. Therefore the assignments of error based upon these refusals cannot be considered.

Order affirmed.