STATE OF IOWA v. J. K. OLDS, Appellant.

**Forgery:** CROSS-EXAMINATION OF PROSECUTOR. The complaining witness in a prosecution for forgery who has testified that he drew a check for the money advanced to defendant on the alleged forged note and also drew a check for other purposes and that he generally destroyed his checks when returned to him. cannot properly be asked on cross-examination why he destroyed them, where the question is not confined to the check in controversy and there is no suggestion that it was destroyed for an improper purpose.

**Confronting:** WAIVER: *Judicial notice.* Where, at defendant's request, the trial was continued on condition that the evidence of witnesses given at previous trials should be admissible, such evidence was admissible without formal proof of the agreement for its admission, the court taking judicial notice thereof; and the right of defendant in a criminal case to be confronted by the witnesses against him may be waived.

**Instruction on Impeachment.** There was testimony tending to impeach and sustain defendant's reputation for truth and veracity and his moral character, and similar testimony concerning other witnesses. The jury was told to consider it as bearing on credibility, and that the evidence of any witness should not be disregarded for this alone, especially in corroborated particulars. *Held,*

*a.* This was not erroneous as limiting the bearing of the testimony on defendant's character to his credibility and excluding it on his guilt or innocence.

*b.* Defendant not having asked an instruction on the effect of this evidence, the failure to instruct more fully than this is not erroneous.

*c.* The instruction did not authorize the jury to disregard testimony.

**Misconduct of Judge:** JURY. An affidavit showed that while the jury was deliberating the judge entered the jury room, and engaged in a conversation with two jurors, which was not disclosed. Another affidavit stated that he had so entered, and, on being informed

that the jury could not agree, told them that he could not communicate with them there, and that they would have to be brought into court. *Held*, that no conduct prejudicial to defendant was shown.

SAME. Where the jury were brought into court in the absence of defendant and his counsel, and stated to the court that they could not agree, and the judge told them that he could not give them any light, and sent them back, defendant was not prejudiced.

SAME. It is not improper for the court to state to the jury in a criminal case on its third trial, after they have been out some time and have reported that they cannot agree, that it is very important that a verdict should be arrived at and that they should retire again and make an earnest effort to reach a verdict, and that in the meantime the court will consider the matter and see if there are additional instructions he can give them

**Misconduct of Jurors:** NEW TRIAL. Improper statements made by some of the jurors while they were deliberating upon their verdict in a criminal case are not alone sufficient to authorize a new trial, but it must appear that prejudice resulted therefrom, or that the statements were of a character to cause prejudice and that the presumption that they were prejudicial has not been overcome, especially where the affidavits are in conflict both as to what occurred and as to whether it was prejudicial, and the trial judge refuses a new trial.

**Appeal:** AFFIDAVITS It is not competent to show on appeal, by affidavits, what transpired in the presence of the court or judge unless the judge refuses to certify the facts as they are claimed to be by the party desiring his certificate.

*Appeal from Dallas District Court.*—HON. J. A. STORY, Judge.

TUESDAY, OCTOBER 4, 1898.

THE defendant was convicted of the crime of forgery, and from a judgment which required that he be imprisoned in the state penitentiary at Fort Madison for the term of three years, and pay the costs taxed in the case he appeals.—*Affirmed.*

*Shortley & Harpel, White & Clark,* and *H. A. Hoyt* for appellant.

*Milton Remley,* Attorney General, and *Edmund Nichols* for the State.

ROBINSON, J.—The defendant is accused of the crime of forging a negotiable promissory note for the sum of five hundred dollars, which purported to be the note of J. K. Myers and Myer E. Myers. It is averred that by the name last given the defendant meant Mary E. Myers, the wife of J. K. Myers.

I.     It was claimed in behalf of the state that the defendant made several loans of money for one A. Bohner, and that he applied to Bohner to make a loan to J. K. Myers, and stated that Myers and his wife would give their note for that amount; that Bohner agreed to make the loan, drew the required amount of money from a bank, and paid it to the defendant, receiving from him in exchange the note in question. Bohner, having testified that he loaned money and bought horses, checking the money from the bank, sometimes making the checks payable to himself and sometimes to others; that he did not have the check on which he drew the money for the note in question ; and that the checks were returned to him, and generally destroyed,—was asked: "Why did you destroy them ?" An objection to the question was sustained, and of that ruling the appellant complains. We think it was correct. Bohner's reasons for destroying the checks after they had been paid and returned to him were wholly immaterial. The question was not confined to the check used to procure money for the note in controversy, and there is no suggestion in the record that it was destroyed for an improper purpose.

II.     During the trial of the cause the state offered in evidence a transcript of the official shorthand reporter's notes of the testimony given on a former trial of the cause by Marshall D. Ewell. In connection with the offer the statement was made that the "evidence is offered under the stipulation and terms provided in the continuance of this cause at the last term of court." The defendant objected to the introduction of the evidence, "for the reason that it is incompetent, the stipulation referred to not relating to any use of the testimony in this case, and the statute provides that the defendant

shall be confronted with the witnesses on his trial." The objection was overruled, and the evidence was admitted. It appears that there have been several trials of this cause. The last one was commenced in April, 1896. At the November term, 1895, the defendant applied for a continuance of the cause. The court found the application to be insufficient in law, but in consideration of the condition of the defendant, the engagement of counsel in other courts, the business of the court, and the early day at which it was required to adjourn, and in the furtherance of justice, continued the cause upon the following, among other, terms and conditions, to-wit: "That the personal presence of any witness or witnesses who were examined and testified on the trial of the cause of the State of Iowa against J. K. Olds, No. 739, criminal, in this court, which was tried at the November term, A. D. 1894, of this court, is waived by the defendant, and defendant expressly consents that upon the trial of this cause at any time hereafter the testimony of any such witness or witnesses as taken by and reduced to writing by the official shorthand reporter at the time thereof may be read in evidence on the trial of this cause, and shall have the same force and effect as if such witness or witnesses were personally present at the time of the trial, and orally examined before the jury, and such testimony may be read to the jury, either from a certified transcript of the testimony of such witness or witnesses, or may be read by the official shorthand reporter taking the same from the notes.     *     *     * To all which the defendant in person and by counsel, in open court, voluntarily agrees thereto, and accepts such terms, and upon the acceptance of the conditions imposed it is ordered that this cause be continued until the next term of this court. *     *     *"  The record we have set out is signed by one of the judges of the judicial district of which Dallas county was a part, and is contained in an additional abstract filed by the state, and is shown by the transcript. The appellant contends in this court that the record we have set out was not introduced in evidence in the district court, and denies that any evidence was offered to show that the

transcript read was a transcript of the testimony of Ewell given on a trial of this cause. It is evident that the objections thus urged are purely technical, and made for the first time in this court. The appellant now relies upon the failure of the record to show that the matter we have set out was formally introduced in evidence, or that formal proof was offered to show that the transcript read was a transcript of the evidence which Ewell gave on a trial to this cause. It will be noticed that these alleged defects were not presented by the objection made in the district court. That objection was based upon the alleged ground that the transcript offered was incompetent, that the statute provided that the defendant should be confronted on the trial by the witnesses against him, and that the stipulation did not provide for the use of the testimony in this case. Whether the transcript was admissible in evidence was a preliminary matter, to be determined by the court. For that purpose the court was authorized to take judicial notice of the record in this case, and of the stipulation thereby shown, and it was not necessary to make formal proof of such record and stipulation. It is true that it is the right of the defendant in a criminal prosecution to be confronted on the trial by the witnesses against him, but it is a right which may be waived by him, and the testimony of the witnesses, in writing, be received. *State v. Fooks,* 65 Iowa, 452; *State v. Polson,* 29 Iowa, 133. The order of the court to which the parties agreed provided for the transcript of testimony which was received in evidence, and the court did not err in receiving it.

III. The sixth paragraph of the charge to the jury is as follows: "Testimony has been introduced to impeach certain witnesses in this case, tending to show that their reputation for truth and veracity is bad; also that their general moral character is bad. Testimony has also been introduced tending to sustain their reputation for truth and veracity, and their general moral character. You are to consider such testimony as bearing on the credibility of such wit-

nesses, but you should not, for such reason alone, disregard their testimony, especially in those particulars, if any, where they are corroborated by other credible witnesses, or by facts and circumstances proven by the evidence in the case. You are to consider all their testimony in the light of, and in connection with, all the other evidence and circumstances disclosed in the case, and give to the evidence of said witnesses such credibility as you may deem it entitled to receive."

The defendant testified as a witness, and testimony was introduced which tended to show that his reputation for truth and veracity and his moral character were bad, while other testimony tended to show that they were good. Similar testimony was given respecting other witnesses. The appellant complains of the portion of the charge quoted, and alleges that it erroneously limited the effect of the proof of his general moral character to his credibility, whereas it should have been given weight in determining the fact of his guilt, and, further, that it licensed the jury to disregard testimony. We do not think either of the objections is well founded. The testimony offered by the state was given after the defendant had testified, for the purpose of affecting his credibility as a witness. The portion of the charge in question did not designate the defendant specifically, but was general in its terms, and applied to all of the witnesses whose credibility had been assailed. It did not in any manner refer to the weight which should be given to proof of moral character as tending to prove or disprove the innocence of the defendant. In view of the character of the testimony given, and the purpose which the court designed to accomplish by the portion of the charge in question, it was the duty of the defendant to ask such further instruction as he desired in regard to the effect of the evidence in controversy, and the court did not err, in the absence of a request of that kind, in not instructing more fully respecting such evidence. We do not find any ground for the claim that the charge authorized the jury to disregard testimony.

IV.   It is insisted with great earnestness that the evidence does not sustain the verdict.   Much evidence, including the testimony of numerous expert witnesses, was given to establish the guilt of the defendant, and to disprove it, and it is evident that the case was not only warmly contested, but that it was thoroughly tried.   Much evidence tended strongly to show that the defendant was guilty as charged; and, while it was contradicted in the most direct and positive manner, we cannot say that the evidence of guilt was not sufficient to sustain the conviction.

V.   The affidavits of jurors were used in support of a motion for a new trial.   One of them avers that, after the jury had been deliberating about three hours, the trial judge entered the jury room, and engaged in conversation with two jurors, but that the conversation was not heard by the affiant.   Another affidavit states that the judge entered the jury room while the jury was there; that he was informed that the jurors had difficulty in agreeing as to some of the evidence, and a juror named Higgs said he could not agree with the others; that the judge, in response, said he could not communicate with the jury in its room, and that it would have to be brought into court.   If the affidavits be accepted as competent proof of what occurred, it does not appear that anything was said or done by the judge which could have prejudiced the defendant.   It is not competent, however, to show by affidavits what transpires in the presence of the court or judge, unless the judge refuses to certify the facts as they are claimed to be by the party desiring his certificate.   See *State v. La Grange,* 99 Iowa, 10.   It appears from a certificate of the trial judge that the jury was brought into court in the absence of the defendant and his attorney; that the jury then informed the court that an agreement had not been reached, and that the cause of the disagreement was a question of fact; that the court thereupon stated that it could not give the jury any light, and it was returned to the jury room.

What was thus done and said was entirely proper, and without prejudice to the defendant. Nothing in the record, excepting the affidavits already referred to, shows that the judge entered the jury room. It appears from a statement in the record, not found in the judge's certificate, that on one occasion when the jury was brought before the court and reported that it had not been able to agree on account of a difference respecting a question of fact the court said to the jurors: "This is a case that it is very important that a verdict should be arrived at; and, while you have been out for quite a long while, I feel that it is the duty of the court to ask you to retire again, and make an earnest effort on the part of each one of you to arrive at a verdict, and in the meantime I shall consider the matter, and see if there is some additional instructions that I may be able to give you, that may help you some in arriving at a verdict. You may retire with your bailiff." There was nothing in what was thus said and done of which the defendant can justly complain. It appears that there had been two pervious trials of the cause, and that fact and the character of the case made an agreement by the jury especially desirable.

VI.   The appellant complains of misconduct on the part of some of the jurors. It appears that for a considerable time preceding the agreement eleven of the jurors favored a verdict of guilty, and that Juror Higgs alone favored a verdict of not guilty. Affidavits of several of the jurors have been filed, which state, in substance, that while the jury was considering the case, and while Higgs was contending for a verdict for the defendant, some of the jurors told him, in order to induce him to agree to a verdict of guilty, that, counting jurors who had favored conviction on the former trials, twenty-five or thirty jurors believed the defendant guilty; that defendant had been caught with a woman or women in a block in the town of Perry, suggesting that he had been guilty of immoral sexual relations with the woman or women; that he had been in several "scrapes" in Perry

before, although the nature of the "scrapes" was not stated, excepting that they were dishonorable; that the defendant had been in at least two other "scrapes" of the same nature as that involved in this case; that he was generally crooked; that he was a bad man generally, and ought to be convicted, and that the general outside opinion was that he was guilty. Some of the affidavits state that while the jury was deliberating some of the jurors had a conversation in the hall adjoining the jury room, with the sheriff, who was acting as bailiff in charge of the jury; that the sheriff was then told that there was "no way of bringing Higgs over unless we freeze him out," and the sheriff answered, "You will have to freeze him out, then, as the judge says there will have to be a verdict;" that the statement of the sheriff was repeated to Higgs; that Higgs was asked by the jurors how much he was getting for hanging the jury, and he was accused of having improper motives in doing so, and it was suggested that he had received money for that purpose; that it was repeatedly said in the presence of Higgs that the other jurors would freeze him out; that they could stand it longer than he could. Other statements of an improper nature are alleged to have been made during the deliberations of the jury. An affidavit made by Higgs states that from what the judge said about having a verdict he became strongly impressed with the idea that a verdict would have to be rendered; that he did not believe that the evidence showed that the defendant was guilty; that the other jurors insisted on a verdict for the state; that the sheriff had informed him that the defendant would get a re-hearing in the supreme court, and would not have to go to jail; that the affiant believed he could not hold out much longer against younger and more robust men, and, not caring to endure longer the insinuations and covert abuse to which he had been subjected for hours, he finally agreed to the verdict which was rendered. The larger part of the affidavit of Higgs is devoted to matters which inhere in the verdict, and is, therefore, of no force. However, the competent allegations of mis-

conduct contained in affidavits filed by the defendant would have been ample, had they not been controverted, to require a new trial. *State v. La Grange,* 99 Iowa, 10. But the counter affidavits filed by the state show that many of the claims made by the defendant are without sufficient grounds, and that prejudice could not have resulted to him from the matter of which he complains. It is shown that the insinuations respecting the motives and conduct of Higgs were spoken in jest, and were so understood by him; that before the agreement was reached it was stated by different jurors, and agreed to by all, that all remarks which had been made, and which were not based upon the evidence, should be disregarded, and the case determined solely upon its merits, and that thereafter no remarks were made not based upon the evidence offered in court; that it was said the case would probably be appealed to the supreme court, but it was agreed that the determination of the case by the jury could not be affected by that fact, and that it was agreed by all, especially by Higgs, that no weight could be given to the result of any former trial, and that Higgs was treated kindly and with respect, by his fellow jurors. The sheriff, in an affidavit made by him, denies explicitly having made the statements attributed to him, and recites what was said and done by him; and, if his statement be correct, he was not guilty of any misconduct. It is no doubt true that improper statements were made by some jurors while they were deliberating upon their verdict, but that alone is not sufficient to authorize a new trial. It must appear that prejudice resulted from the statements, or that they were of a character to cause prejudice, and that the presumption that they were prejudiced has not been overcome. In *Foedisch v. Railway Co.,* 100 Iowa, 728, it was said: "A verdict will not be set aside merely because a jury member has, in violation of his sworn duty, talked to persons about the case. It must appear that the misconduct was such as to materially affect the substantial rights of the complaining party." In *Carbon v. City of Ottumwa,* 95 Iowa, 524, it

was said: "It is not, however, every act of misconduct of a juror which will warrant a court in setting aside a verdict. It should be made to appear that the misconduct prejudiced the complaining party. The circumstances disclosed should be such as to satisfy the trial court that a fair and impartial trial has not been had." The cases cited were civil, but the rules stated are applicable in criminal cases, although it is true that on some grounds the courts will set aside verdicts more readily in criminal than in civil cases. *State v. Wise,* 83 Iowa, 596. Among the cases which tend to support the rule we have announced in this case are *State v. Woodson,* 41 Iowa, 425; *State v. Beste,* 91 Iowa, 565. A careful examination of the case satisfies us that the misconduct of the jurors to which we have referred, so far as it is shown, was not prejudicial. What we have said disposes of the controlling questions in the case. We have considered all questions presented in argument, but some are not of sufficient importance to justify special mention of them. It is sufficient to say that we do not find any ground for disturbing the judgment of the district court, and it is AFFIRMED.