### Ex parte COVELL GILBERT.

No. A-9963.   Feb. 26, 1941.
(111 P. 2d 205.)

Hulsey & Hulsey and W. N. Redwine, all of McAles-ter, for petitioner.

Mac Q. Williamson, Atty. Gen., and Sam H. Lattimore, Asst. Atty. Gen., for the State.

BAREFOOT, P. J.  Petitioner, Covell Gilbert, filed petition for writ of habeas corpus in this court on the 8th day of November, 1940. A hearing has been had thereon and evidence taken, oral argument had, and briefs have been filed, supplemental reply brief of petitioner having been filed on the 24th day of January, 1941.

It is alleged that petitioner is confined in the Penitentiary at McAlester by reason of three commitments issued by the district court of Tulsa county on the 20th day of February, 1936, in cases Nos. 7571, 7575, and 7576. In case No. 7571 he was charged with the crime of murder on the 2nd day of July, 1935, for which he received a sentence of life imprisonment. In case No. 7575 he was charged with robbery with firearms in connection with the larceny of an automobile from H. S. Hensley on the 25th day of June, 1935. In case No. 7576 he was charged with the crime of robbery with firearms in connection with the larceny of an automobile from Don Williams on the 30th day of June, 1935. In the last two cases he was sentenced for a term of 15 years in each case, both sentences to run concurrent with case No. 7571.

It is further alleged that at the time the petitioner was sentenced in the above cases on the 20th day of February, 1936, he was an escaped person from the Eastern Oklahoma Hospital for Insane at Vinita, he having been committed to said hospital from Osage county during the year 1933, and had not been legally discharged therefrom. It is further alleged that, by reason of said judgments and sentences having been rendered against petitioner under the above circumstances, they were null and void and that petitioner should be discharged.

It is further alleged that said petitioner, at the time judgment and sentence was rendered against him, "refused to enter any of the pleas or to waive any of his constitutional or statutory rights and all such waivers and pleas were made by his attorney, with his knowledge but without his consent." In this connection, petitioner contends that he did not "waive the 48 hours' time after the plea for sentence to be pronounced, and the court did not advise petitioner of his right to have the sentence postponed for at least 48 hours, but the court pronounced the judgment and sentence immediately * * * in violation of constitutional and statutory rights of petitioner."

The record reveals that petitioner was arrested on case No. 7571 and placed in jail on the 22nd day of January, 1936; that on this date he was brought before the judge of the court of common pleas of Tulsa county. He was represented by counsel, waived the reading of the information, and entered a plea of not guilty. Preliminary examination was set for January 29, 1936. On that date the minutes of the court state:

"Defendant Covell Gilbert represented by Tillman & Tillman of Pawhuska, Okla. announce ready at the preliminary. One witness sworn. Reporter Bell. State introduces testimony and rested. Defendant Gilbert demurs Demurrer overruled. Defendant stands mute. Defendant Gilbert ordered held for trial in District Court on charge of Murder. Defendant ordered held without bond. Commitment issued. Defendant Gilbert in open court requests of Co. Atty. a copy of purported written statement of defendant Gilbert to police. Co. Atty. requests time to submit authorities. Hearing to be set at request."

An information was filed in the district court of Tulsa county on the 18th day of February, 1936. The minutes of the court are not full, but among them the following appears:

"2/20/36.   Defendant Covell Gilbert present in open court and by Counsel Fred Tillman State represented by Holly L. Anderson County Atty.   Defendant Covell Gilbert withdraws his plea of not guilty and enters a plea of guilty.   And upon such plea and the recommendation of Holly L. Anderson County Atty. said defendant is hereby sentenced to imprisonment in the State penitentiary at McAlester Oklahoma for the rest of his natural life.   Commitment issued."

Defendant was received at the penitentiary on February 21, 1936.

With reference to petitioner's commitment in the Eastern Oklahoma Hospital for Insane, petitioner's father, C. H. Gilbert, who testified at the hearing before this court, stated that he was sent there from Osage county sometime in the year 1933 for treatment of syphilis.   That he remained there about ten months and got away and came home; that he telephoned Dr. Adams, and he told him to let him stay there, but to bring him back for his treatments; that petitioner remained at home after that time and worked in a drugstore at Bartlesville and a tailoring shop at Hominy; that he had not been entirely cured; that the crimes with which he stood charged were committed over a year after he returned from the hospital, to wit: On June 25, 1935, June 30, 1935, and July 2, 1935.   That after these crimes were committed and petitioner was in jail, he talked with the county attorney; that he employed Fred Tillman, a lawyer of Pawhuska, to represent petitioner, and that he represented him when he was arraigned in the preliminary trial and when he pleaded guilty before the district judge in each of said cases; that in his discussion with the county attorney, he would not agree to a plea of guilty unless he would be sent to where he could receive treatment for syphilis; that the county attorney informed him he could receive this treatment in the penitentiary,

and he told him he would guarantee that the boy would be sent "to some place where he could get the treatments." He further testified that he had received word from the doctors in the penitentiary who had treated petitioner since he had been there and that he had now been cured and no longer had this disease.

The county attorney testified at the hearing, stating that because of the length of time he did not remember all that occurred at the time petitioner pleaded guilty and was sentenced. He did not recall making any promise to anyone at that time, and it was not his custom to make any promises to one guilty of murder. He said that he made no promise to get the petitioner out of the Penitentiary if he was guilty. He stated he has told persons that they would be treated for syphilis in the Penitentiary and might have told the father of the petitioner so in this case. He further stated:

"A. We handled about 1,600 cases a year while I was in the county attorney's office, but I don't really just recall it. But I just say this to the court, that I had no authority to promise to get him out, and I didn't do that, because I didn't have the authority."

It is provided by Oklahoma Statutes 1931, sections 3211, 3212, and 3213, Oklahoma Statutes Annotated, title 22, §§ 1161, 1162, and 1163, as follows:

(1) "An act done by a person in a state of insanity cannot be punished as a public offense, nor can a person be tried, adjudged to punishment, or punished for a public offense, while he or she, as the case may be, is insane. * * *"

(2) "When an indictment or information is called for trial, or upon conviction the defendant is brought up for judgment, if a doubt arise as to the sanity of the defendant, the court must order a jury to be impaneled from the jurors summoned and returned for the term, or who may be summoned by direction of the court, to inquire into the fact."

(3) "The trial of the cause or the pronouncing the judgment, as the case may be, must be suspended until the question of insanity is determined by the verdict of the jury."

The construction of these statutes has been before this court on many occasions, and reference to some of these cases will hereafter be made. The question of whether a writ of habeas corpus may be maintained under the facts as they appear here has also been considered.

In the early case of In re Maas, 10 Okla. 302, 61 P. 1057, 1058, the territorial court had under consideration a case similar in many respects to the case at bar. In that case, after reviewing the facts, Judge Burwell said:

" * * * If the trial court committed error in pronouncing judgment and sentence upon the defendant, his only remedy is by an appeal to this court. Such matters cannot be reviewed in this action."

In the case of Ex parte Yandell, 54 Okla. Cr. 357, 22 P. 2d 114, 115, this court had before it the exact question here raised, and in an opinion by Judge Edwards, where the petitioner had been adjudged an insane person by the county court of Seminole county, and a copy of the order was attached to the petition, and it was further alleged that he appeared without counsel and none was appointed for him, after review of the cases relied upon by petitioner of In re Wright, 74 Kan. 406, 86 P. 460, 89 P. 678, and Mabry v. Hoye, 124 Miss. 144, 87 So. 4, said:

"It is fundamental that habeas corpus cannot be invoked for the release of one imprisoned under a judgment and commitment by a court of competent jurisdiction unless the judgment and sentence is clearly void. After a judgment of conviction has become final, the question of defendant's insanity at the time of the commission of the offense or at the time of trial cannot be raised on habeas corpus. Ex parte Stevenson, 187 Cal. 773, 204 P. 216. See,

also, In re Selowsky, 189 Cal. 331, 208 P. 99; People ex rel. Cassidy v. Lawes, Warden, 112 Misc. 257, 182 N. Y. S. 545, 546; Winslow v. Green, 155 Ind. 368, 58 N. E. 259; Ex parte Heytz, 17 Okla. Cr. 698 192 P. 698.

"In the Cassidy Case, supra, wherein it was sought by habeas corpus to release one convicted of a felony because of his imbecility at all times, the court said:

" ' "Want of jurisdiction is want of power to proceed." But there was no want of power to proceed. The Supreme Court had jurisdiction of the offense in this case and of the prisoner; this is conceded. It also had the power and it was its duty to proceed, unless the mental defect of the prisoner was brought to the attention of the court and established by competent proof. The naked assertion of the prisoner's imbecility at this time, or the mere admission of it by the Attorney General in this proceeding, is not sufficient to undermine the jurisdiction of the trial court and render the trial a nullity. People ex rel. Scharff v. Frost, 198 N. Y. 110, 91 N. E. 376, 139 Am. St. Rep. 801.' "

See, also, In re McNaught, 1 Okla. Cr. 528, 99 P. 241; Ex parte Cranford, 3 Okla. Cr. 189, 105 P. 367; Ex parte Stevenson, 187 Cal. 773, 204 P. 216; In re McWilliams, 254 Mo. 512, 164 S. W. 221; In re Selowsky, 189 Cal. 331, 208 P. 99; Ex parte Shaffer, 70 Mont. 609, 227 P. 37; Smith v. Roach (Wyo.) 106 P. 2d 536.

In the case of In re Maas, supra, the court discusses fully the statutes above quoted, and after review as to the proper action to be taken by the court thereunder, says:

"But who is to determine as to whether such doubt exists in the mind of the court? In reason only one answer can be given. The court alone must say if such doubt exists. The trial judge sees the defendant, and is necessarily more or less familiar with the circumstances surrounding him and his case; and the fact that the county board of insanity may have adjudged him insane prior to the time fixed for his sentence, even if the order of such adjudication was admitted in evidence or considered by the

trial court, would not necessarily control its action, because such order is not an adjudication of finding of any court, and is not admissible upon a trial to prove the insanity of such person. Such an order amounts to no more than the expression of an opinion by any other person or persons out of court as to the mental condition of a defendant's mind, except where the right of the officers of the asylum to confine and treat such person is called in question, or in other cases of a kindred character which fall within the spirit of the law authorizing such finding by the board of insanity. See Dewey v. Allgire, 37 Neb. 6, 55 Am. St. Rep. 276, 40 Am. St. Rep. 468; Knox v. Haug, 48 Minn. 58, 50 N. W. 934; Leggate v. Clark, 111 Mass. 308.

"The boards of insanity are special boards created by law for a special purpose. It was only intended to clothe them with the power to determine who should be confined in the territorial asylum for treatment, and they have not the power to fix one's legal status (that is, to declare one to be, in law, sane or insane), and the fact that probate judges are made members of these respective boards changes not the rule. When a probate judge acts in this capacity, he acts as any other member of the board, and not as a probate judge or as a probate court.

"Under the laws of this territory, the power to adjudge one legally insane is vested in the judge of the probate court by sections 1517, 1518, and other sections of article 14 of chapter 18 of the Statutes of Oklahoma of 1893, 58 Okla. St. Ann. §§ 851, 852, and § 761 et seq., and under these sections a guardian can only be appointed when it is made to appear to the judge of the probate court, after a full hearing, that such person is incapable of taking care of himself and managing his property; and this hearing can only be had after due notice as provided by the statutes, and the person sought to have adjudged insane, if able to attend, must be produced at the hearing. It is this kind of an order adjudging one to be insane that the authorities refer to as being entitled to faith and credit, and not to the orders of ordinary boards of insanity. Therefore the order of the board of insanity adjudging Maas to

be insane, which was introduced in evidence in support of the motion in arrest of judgment, was not controlling upon the trial court."

This court has since its creation had occasion to have before it the construction of these statutes many times. Some of the cases are as follows: Marshall v. Territory, 2 Okla. Cr. 136, 101 P. 139; Maas v. Territory, 10 Okla. 714, 63 P. 960, 53 L. R. A. 814; Denton v. State, 58 Okla. Cr. 275, 53 P. 2d 1136; Weiland v. State, 58 Okla. Cr. 108, 50 P. 2d 741; Signs v. State, 35 Okla. Cr. 340, 250 P. 938; Alexander v. State, 66 Okla. Cr. 219, 90 P. 2d 949; Lee v. State, 30 Okla. Cr. 14, 234 P. 654.

It has also had before it in many illustrious cases the question of insanity as a defense in criminal cases. Judge Doyle, in his long experience upon the bench, has had occasion to write many opinions dealing with this question, and he has exhausted the subject in the following early day opinions of this court in which the rule to be followed in testing criminal responsibility is announced as follows:

"The true test of criminal responsibility, where the defense of insanity is interposed, is whether the defendant had sufficient reason to know right from wrong." Smith v. State, 12 Okla. Cr. 307, 155 P. 699; Adair v. State, 6 Okla. Cr. 284, 118 P. 416, 44 L. R. A., N. S., 119; Alberty v. State, 10 Okla. Cr. 616, 140 P. 1025; Owen v. State, 13 Okla. Cr. 195, 163 P. 548; Roe v. State, 17 Okla. Cr. 587, 191 P. 1048.

And this is the rule that has been followed in this state to the present time, where the issue of insanity has been presented to the jury.

Counsel for petitioner in his brief says:

"We are mindful of the law when the question of insanity at the time of trial, has been presented to the trial court and the trial court has made the proper investigation and decided whether or not there is doubt as to sanity,

and has not abused its discretion, and has proceeded to trial, and the defendant has been convicted, the judgment and sentence is not subject to collateral attack and the case is put beyond consideration of the trial court except on appeal and a reversal, and that where the appellate court affirms the judgment the question of sanity is not a question to be raised in habeas corpus proceedings, as held in the case Ex parte Stevenson first and second syllabus [Cal.] 204 P. 216, as follows:

" '1. The defense of insanity having been presented, as it must be, to the court having jurisdiction of the cause, such court's decision is final against collateral attack, and the case put beyond further consideration by any court if the appellate court affirms the judgment.

" '2. As respects the court's authority to proceed with the trial of a criminal charge against one claimed to be of unsound mind and the legality of a sentence against him, habeas corpus does not lie, unless lack of jurisdiction appears on the face of the record.' "

But he contends that there was no judicial determination of the question of insanity by the court and that there was abuse of discretion in not ordering a jury trial when attention was called that petitioner had been an inmate of the Eastern Oklahoma Hospital for Insane at Vinita, and that he had not been legally discharged therefrom.

In the first place, the record does not disclose that the court was so informed, but it may be presumed, for the sake of argument, that he did have this information, as he had talked with the father and the attorney representing the defendant. There was no motion filed, no request made, and no evidence offered to raise any doubt in the mind of the court as to the sanity of defendant, either at the time of the commission of the offense or at the time he entered his plea of guilty and was sentenced by the court. It was never at any time considered by anyone that petitioner was insane. From the record and the evidence of

the father of petitioner it was evidently considered by all that his confinement in the hospital at Vinita was for the purpose of receiving treatment for syphilis, and not because he was insane. In all of the cases and authorities' cited by petitioners, which are: Marshall v. Territory, 2 Okla. Cr. 136, 101 P. 139; Fralick v. State, 24 Ariz. 4, 212 P. 377; People v. West, 25 Cal. App. 369, 143 P. 793; Freeman v. People, 4 Denio, N. Y., 9, 47 Am. Dec. 216; Youtsey v. United States, 6 Cir., 97 F. 937; Denton v. State, 58 Okla. Cr. 275, 53 P. 2d 1136, there was a request or motion for a hearing upon the question of insanity, either before the trial of the party or after conviction and before sentence, and testimony taken thereon, and in all of the authorities the question arose on appeal and not on habeas corpus. The evidence in each case was such that would cause a doubt to arise in the mind of the court as to the sanity of the defendant.

In the case of Marshall v. Territory, supra, cited by petitioner, the application was presented on motion for new trial and in arrest of judgment, and the court heard evidence thereon and it was held that the testimony was sufficient to raise a doubt in the mind of the court, and that the court erred in refusing to impanel a jury to pass upon the question of insanity before sentencing defendant. The court recognized the well-founded rule that this question may be presented upon application for a continuance, motion for new trial, motion in arrest of judgment, by ex parte affidavit or declaration of bystander, or the court of its own motion, and while the court cannot act arbitrarily in the matter, it has the right to look to the source of the information and the motive, and come to a proper conclusion as to whether there is a doubt in his mind as to the sanity of the defendant. This is in harmony with the rule announced in Re Maas, supra, heretofore cited.

The facts in the instant case reveal that petitioner was sent to the Eastern Oklahoma Hospital for Insane at Vinita not because he was insane, but because he could receive treatment for the disease which he had, and while he was not discharged from the hospital at Vinita, his disappearance and whereabouts were known to the managers of that institution, and no effort was made to have him returned. They informed the father of petitioner that he could remain at home, but for him to return for treatments for the disease with which he was afflicted, and this he did. The crimes of murder and robbery with firearms were committed by him long after he had left the hospital and after he had worked in a drugstore in Bartlesville and a cleaning establishment in Hominy. The record does not reveal at any time that the petitioner was insane, or that he committed any acts of violence which in the least tend to show that he was insane. The only testimony of his father was that he was obstinate and did not want to do as he told him, as he had in the past. Certainly this was not proof of insanity, such as contemplated by the statutes of this state and as interpreted by the decisions of this court as above cited.

Petitioner was arrested on the 21st day of January, 1936. A preliminary information was filed against him in the court of common pleas of Tulsa county on the 22nd day of January, 1936. He was arraigned thereon and was represented by Hon. Fred Tillman, a prominent member of the Oklahoma bar, and one well skilled in criminal practice and procedure. His father was also present. He waived the reading of the information and entered a plea of not guilty. He was ordered held for trial in the district court, and an information was filed on February 18, 1936, charging him with the crime of murder. On February 20, 1936, he appeared before the district judge. He was repre-

sented by the same counsel who represented him in the preliminary examination. His father was present and had consulted with the county attorney. His plea of not guilty was withdrawn and a plea of guilty entered, and sentence was passed upon him in case No. 7571, in which he was charged with murder. He was given a life sentence. At the same time, informations having been filed against him in cases Nos. 7575 and 7576, in which he was charged with robbery with firearms, he entered his pleas of guilty in each of these cases and was given a 15-year sentence in each case to run concurrently with case No. 7571.

Under these circumstances it cannot be said that petitioner was denied any right which he had under the statutes and Constitution of this state. He had the benefit of able counsel at every step of the proceedings, and had the advice of his father. The county attorney had no authority, as he stated, to make any promise that he would be released from the penitentiary at any time, and stated that he made no such promise. The fact that his father stated he would not have advised him to plead guilty unless he could get treatment for the disease which he had is in no way binding upon the court. He stood charged with the crime of murder, and the court, with full knowledge of the facts, as revealed by the record, passed sentence upon him. While the record does not affirmatively show he had a preliminary trial in cases No. 7575 and 7576, it does show that a preliminary complaint was filed against him in the court of common pleas in each of these cases on January 22, 1936. The law, in the absence of proof to the contrary, presumes that he did have a preliminary examination or waived the same in the manner provided by law.

Under the decisions of this court in many cases under circumstances above stated, one has been held to waive the

right to be furnished with a copy of the information and 48 hours in which sentence should be passed. Blair v. State, 4 Okla. Cr. 359, 111 P. 1003; Stack v. State, 4 Okla. Cr. 1, 109 P. 126; Canard et al. v. State, 2 Okla. Cr. 505, 103 P. 737, 881, 139 Am. St. Rep. 949; State v. Frisbee, 8 Okla. Cr. 406, 127 P. 1091; Starr v. State, 5 Okla. Cr. 440, 115 P. 356, 367.

In Starr v. State, supra, the court says:

"Generally speaking, the constitutional provisions guaranteeing to every accused person in a criminal action certain rights may be separated into two classes. First, those in which the public generally, and as a community, is interested, as well as the accused, and which are jurisdictional as affecting the power of the court to try the cause, second, those more in the nature of privileges which are for the benefit of the accused alone, and do not affect the general public. The former cannot be waived. Jurisdiction to try the cause is conferred by the law. Consent cannot confer jurisdiction, but the accused may waive a constitutional right or privilege designed for his protection, where no question of public policy is involved. The public as well as the accused have an interest in every criminal trial. The life and liberty of the citizen is a matter of supreme importance to the state, and it should not allow him to throw either away by a failure, intentional or otherwise, to take advantage of his constitutional safeguards. It will not do, however, to say that because the state has a peculiar interest in protecting the citizen accused of crime to the extent of his constitutional rights that he shall in no case be allowed to waive them, for in some cases it may be to his interest to waive them, and the denial of the right to do so would defeat the very object in view when the rights were given, and cause them to operate to the injury rather than to the benefit of the accused. * * *

"Where a constitutional right in a criminal cause is largely for the benefit of the accused or in the nature of a personal privilege, the law is well settled that an accused may waive such right. * * *

" 'His right to meet the witnesses face to face he had waived. So, while he is entitled to have counsel, he is not compelled to have them. He has a right to a subpoena for his witnesses, but he is not obliged to have one issued. And the record need not show that these privileges or rights were formally tendered to him and formally declined, or that an express waiver was signed. It is enough if it does not appear that they were denied when he applied for them.' "

And in quoting from the case of State v. Mortensen, 26 Utah, 312, 73 P. 562, 633, it is said:

"It is not very unlike the right which every one accused of, and being prosecuted for, a crime, has to plead guilty, and thereby waive the production of any evidence by the prosecution, and surely all agree that in such case, where a plea of guilty is entered, a court of competent jurisdiction has power to pass judgment and authorize the penalties of the law to be executed."

In the case of State v. Frisbee, supra [8 Okla. Cr. 406, 127 P. 1095], the court, after citing and reviewing many cases bearing upon this proposition, says:

"The principles announced in these cases meet our entire approval, and they are here reaffirmed. It is a well-settled principle of law, recognized by all appellate courts, that every one may waive a right intended for his own benefit if it can be relinquished without affecting the legal rights of others and without detriment to the community at large. See Reid v. Field, 83 Va. 26, 1 S. E. 395. The right of waiver extends to and includes all descriptions of contractional, statutory, and constitutional rights, except such as are inalienable. An examination of the following cases will show that they fully support the preceding statement: State v. Mitchell, 119 N. C. 784, 25 S. E. 783, 1020; Butler v. State, 97 Ind. 378; Williams v. State, 61 Wis. 281, 21 N. W. 56; Allen v. State, 16 Tex. App. 237; State v. Olds, 106 Iowa, 110, 76 N. W. 644; State v. Sackett, 39 Minn. 69, 38 N. W. 773; State v. Polson, 29 Iowa, 133; People v. Murray, 52 Mich. 288, 17 N. W. 843; Common-

wealth v. Dailey et al., 12 Cush. (Mass.) 80; State v. Fooks, 65 Iowa, 196, 452, 21 N. W. 561, 773; Connelly v. State, 60 Ala. 89, 31 Am. Rep. 34. * * *

"The public policy of this state as is evinced by the Constitution of the state, the legislative enactments, and the repeated decisions of this court is to the effect that the spirit and reason of the law should control rather than that the cold, technical letter of the law should be enforced. We cannot bring ourselves to believe that a provision of our Constitution which was intended solely for the purpose of assisting a defendant to prepare for trial in order that justice might be done should be so construed as to make it a means for the defeat of justice and as a refuge for criminals and a protection for crime. A little reflection will show that the construction placed upon this provision of the Constitution by the trial judge would have directly the opposite effect from that intended. A defendant and his attorneys must of necessity know, when they announce ready for trial, as to whether or not a copy of the list of witnesses with their post office addresses, intended to be used by the state in chief, has been furnished to the defendant or his counsel. If they were permitted, when no such list had been furnished them, not only to remain silent on this question, but announce ready for trial, and permit a jury to be impaneled and sworn and jeopardy to attach, and then object to the reception of any testimony because they had not been served with a copy of the list of such witnesses, it would enable them to take advantage of their own wrong, and it would work the rankest kind of injustice to the state. When a defendant voluntarily announces ready for trial, this operates as a waiver of all preliminary steps prescribed for preparation for trial."

In both the Starr and Frisbee Cases the court in each instance quoted from the case of Perteet v. People, 70 Ill. 171, as follows:

"A prisoner in a capital case is not to be presumed to waive any of his rights; but that he may, by express consent, admit them all away, can be neither doubted nor

denied. He may certainly plead guilty, and thus deprive himself of one of the most valuable rights secured to the citizen—that of a trial by jury. If he can expressly admit away the whole case, then it follows that he can admit away a part of it; but he will not be presumed to have done so. The consent must be expressly shown."

Certainly a plea of guilty with the advice and consent of counsel at every step of the proceedings, as the facts in this case reveal, the defendant had the right to enter his plea of guilty and to waive the rights guaranteed to him under the Constitution and laws of this state.

Petitioner bases his right to have issued a writ of habeas corpus in this case upon the recent decisions of this court in the cases of Ex parte Barnett, 67 Okla. Cr. 300, 94 P. 2d 18, and Ex parte Meadows, 70 Okla. Cr. 304, 106 P. 2d 139. A careful examination of the facts in those cases reveals that they are materially different from the facts in the case at bar. The opinions in those cases are based upon the fact that the petitioners at no time had counsel to represent them in any of the proceedings, either at the preliminary examination, or at the time they entered their plea of guilty in the district court, and were illiterate and not informed by the court of their right to counsel. The opinion of the Supreme Court upon which the Barnett Case was based of Johnson v. Zerbst, 304 U. S. 458, 58 S. Ct. 1019, 82 L. Ed. 1461, is also based upon the fact that the petitioner did not have counsel, either at the time of the preliminary examination or at the time he entered his plea of guilty in the federal district court. In the instant case petitioner had able counsel from the time of his preliminary trial to the time of final sentence. Not only counsel, but his father, was also present and advised with him. In the Barnett Case, the preliminary complaint was filed against petitioner on the 11th day of June, 1934. Information was filed in the district court on the same day,

and judgment and sentence was had the same day. In the Meadows Case, the crime was committed on the 29th day of April, 1932. An information was filed against the petitioner in Tillman county on the 30th day of April, 1932, and judgment and sentence was entered in Tillman county on the same date. Petitioner was on the same date delivered to the officers of Comanche county and preliminary complaint was filed against him on the 30th day of April, 1932, and on the same date information was filed in the district court and defendant entered his plea on the same date, and he was at the same time sentenced to the penitentiary and was placed therein on the same date. The record reveals that he was a minor at the same time he was sentenced, and that, although his father and other kinsmen lived in this state, none of them was notified of his arrest or confinement.

In the case at bar, petitioner was arrested and placed in jail and a preliminary information filed in the court of common pleas of Tulsa county on the 22nd day of January, 1936. His preliminary examination, at which time he was represented by counsel, was not had until January 29, 1936. The information was filed against him on February 18, 1936, and he did not enter his plea of guilty until February 20, 1936, nearly 30 days after his preliminary trial. There was no rush in this case as in the cases cited, and he had the benefit of counsel at all stages. In the Barnett and Meadows Cases, it is recognized that certain principles of law have become definitely established, which it is unnecessary to here quote, but every one of these rights was given the petitioner in this case, except such as might have been properly waived under the law. In the Meadows Case the court says [106 P. 2d 147] :

"In this connection, we wish to state that no general, abstract rules can be set forth which will apply to every

case, but that the question as to whether or not the judgment and sentence has been passed in conformity with the Constitution and statutes depends upon the facts in each particular case."

Justice Black, in the case of Johnson v. Zerbst, supra [304 U. S. 458, 58 S. Ct. 1023, 82 L. Ed. 1461], says:

"The determination of whether there has been an intelligent waiver of right to counsel must depend, in each case, upon the particular facts and circumstances surrounding that case, including the background, experience, and conduct of the accused."

As to whether or not habeas corpus is the proper remedy under the above decisions need not be considered for the reason that, even though it be held that habeas corpus is the proper remedy, the facts in the instant case do not justify the issuance of the writ, and the writ is therefore denied.

JONES and DOYLE, JJ., concur.