## Benedict Boehm, Appellant, *v.* Mrs. Franciska Kress and Martha Gloeckner.

*Will—Issue devisavit vel non—Evidence—Province of court and jury.*

A writing, having the form and substance of a will and drawn with the strictest formality as to matters customarily inserted in wills, was executed by a childless widower in favor of his brother. It was signed, sealed and witnessed as and for a last will and testament. He had expressed a desire to close his house and live with his brother, on whose kindness and attention he might become dependent. He sent for the scrivener on the day the will was written, requesting him to bring testator's brother, the principal

beneficiary, with him. When they came he stated what disposition of his property he wanted to make. His brother, after suggesting that the provisions of the will should be less favorable to himself, left the room. Testator stated in reply to the scrivener that he did not wish to have anything inserted in the will as to his living with his brother and being supported by him, and that his conversation on the subject had nothing to do with the will. The will was read in the presence of testator, first in English, and then translated line by line into German, the language which the testator best understood. It was claimed that the writing was not a will, but was an agreement for support, intended to take effect presently. The witnesses for contestant were obscure in their statements, and failed to distinguish between general conversations which took place before and after the will was written, and the distinct and specific directions as to what it was to contain. The jury found a verdict for defendants and found specifically that testator had full testamentary capacity, and was subjected to no undue influence, but that he did not have a full understanding of the nature of the writing and of the disposition of the property which it contained; and that he did not execute it with the understanding and purpose that it should be his last will, but that it should take effect presently. *Held*, that the evidence was insufficient to sustain the verdict.

Argued Oct. 30, 1896.    Appeal, No. 104, Oct. T., 1896, by plaintiff, from judgment of C. P. No. 1, Allegheny Co., December term, 1895, No. 320, on verdict for defendants.    Before STERRETT, C. J., GREEN, WILLIAMS, McCOLLUM, MITCHELL, DEAN and FELL, JJ.    Reversed.

Issue devisavit vel non.    Before COLLIER, J.
The facts appear by the opinion of the Supreme Court.

Plaintiff's points and answers thereto among others were as follows :

3. That there is no evidence in the case that would justify the jury in finding that the said Leo Boehm had not a full understanding of the nature of the said paper writing purporting to be his last will and testament, and of the dispositions contained therein.    *Answer :* Refused and bill sealed for plaintiff. [1]

4. That there is no evidence in the case which would justify the jury in finding that the paper was other than that which it purports to be, the last will and testament of Leo Boehm. *Answer :* Refused and bill sealed for plaintiff. [2]

*Errors assigned* were (1, 2) above instructions, quoting them.

*J. S. Ferguson* and *E. G. Ferguson*, with them *Henry Meyer*, for appellant.

*Levi Bird Duff*, with him *L. B. D. Reese*, for appellees.

OPINION BY MR. JUSTICE FELL, January 4, 1897 :

The issues of fact certified to the common pleas for trial were : 1st, whether at the time of signing said paper writing the said Leo Boehm had testamentary capacity; 2d, whether there was undue influence used to procure the execution by the said Leo Boehm of said paper writing; 3d, whether the said Leo Boehm had a full understanding of the nature of said paper writing and of the disposition contained therein; 4th, whether the said Leo Boehm executed said paper writing with an understanding and a purpose that it should be his last will and testament or a writing to take effect presently.    The verdict was for the defendant, and the jury returned as special findings that Leo Boehm had at the time of the signing of the paper testamentary capacity, and that there was no undue influence used to procure the execution thereof by him, but that he did not have a full understanding of the nature of the writing and the disposition contained therein; that he did not execute it with the understanding and purpose that it should be his last will, but with the understanding that it should take effect presently.

In form and substance the writing is a will.    It is drawn with the strictest formality.    It is called a last will and testament, it provides for the payment of debts and funeral expenses and for the disposition of the testator's property after his death; it appoints an executor; it revokes all former wills; it is signed, sealed and witnessed as and for the last will and testament of Leo Boehm.    If such a writing as this, found to have been executed by a man possessed of full testamentary capacity and subjected to no undue influence, is to be set aside on the ground that he did not have a full understanding of its nature, and did not execute it for what it purports to be, and for what it on its face is, a will, it should be on very clear evidence.

The last three special findings of the jury can be sustained only by proof sufficient to overcome the writing itself, that it was the intention of Leo Boehm and his brother to enter into a contract for the support of Leo by the brother during his life,

and that the writing was intended to express this agreement, but in fact contained only a part of it.  This is substantially the contestant's claim, but we find nothing in the testimony upon which it can stand.  There were three witnesses examined upon the subject, Ulrich Rittenger, who wrote the will, Lorenz Manz, a friend of the testator, who was called in to witness its execution, and Benedict Boehm, a brother, who is the chief beneficiary.  There is no conflict in their testimony as to what led up to and took place at the execution of the will.  The important facts are briefly these: Leo Boehm died March 26, 1893, unmarried and without children.  His surviving relatives were his brother Benedict, three sisters and the children of two deceased brothers.  His property consisted of a house and lot on Penn avenue, worth about $5,200, and personal property appraised at $3,600.  His will was written and signed August 1, 1893.  His wife had died eleven days before.  Twice during the week following her death he told his brother Benedict that he desired to make a new will, and he requested Mr. Rittenger to write it for him.  On August 1, he sent a messenger to Mr. Rittenger, requesting him to come to his house that day to write his will and to bring Benedict with him.  When they came Leo told them he wanted his will written, and that it was his intention to leave his house and furniture and personal effects to Benedict on the condition that he should pay $300 to each of five relatives named, and to expend $500 in the erection of a monument.  He stated his reason for so doing to be that he wanted the title to his house to continue in the family name; that he was alone and in ill health, and wished to close the house and live with his brother, on whose kindness and attention he might become dependent.  Benedict then declined to advise him about the will and told him that he would be satisfied if the estate were left to the church or charities, and left the room.  Leo then, alone with Mr. Rittenger, gave him directions as to the will, and Rittenger wrote them down in German.  At the suggestion of Mr. Rittenger, Leo called Benedict into the room, told him what disposition he intended to make of his estate, and asked him if he would act as executor. Benedict agreed to act as executor, but suggested that the five legacies of $300 to be paid by him were too small, and requested that they be increased to $500 each in order that there might

be no dissatisfaction. To this Leo at first objected, saying that the property might depreciate in value, but he finally consented, and after Benedict had withdrawn from the room the will was written in English by Mr. Rittenger from the memoranda before made, and without change except in the amounts of the legacies. Lorenz Manz, a subscribing witness, and Benedict were called into the room, and in their presence the will was read by Mr. Rittenger to Leo, first in English, and then translated line by line into German. It was then signed and witnessed and left with the testator, and it remained in his possession until a short time before his death, when he removed to his brother's house and handed him the will with other papers to put in the safe.

Before the will was written Leo Boehm was asked by Mr. Rittenger if he wished a provision put into the will to cover what had been said about his going to live with Benedict, and being supported by him, and he replied that he did not, that the conversation on the subject had nothing to do with the will, and that it was to contain only the provisions as to the payment of legacies. After the will was signed Leo spoke to his brother of a mortgage of $2,000 and an insurance certificate for $1,500 which he owned, and expressed a desire that the amount of the mortgage should be distributed to friends and charities named by him, and that the amount realized from the insurance should be used by Benedict to pay the expenses of his funeral and as a fund to keep his grave in order, but said he did not want this put in the will as he could trust his brother to do what was right. Under this testimony there could be no proper finding that he did not understand the writing or that he did not intend it to be his will.

These conversations between the brothers before and after the signing of the will are the basis of the claim by the contestants that the writing was intended as an agreement between them. Some of the witnesses spoke English very imperfectly, and it is exceedingly difficult to determine from the confused mass of testimony just what did take place, and the order of the events. At the hearing before the orphans' court for an issue the witnesses failed utterly to distinguish between general conversations which took place before and after the will was written and the distinct and specific directions as to what it was to contain.

This distinction was made by them at the trial of the case in the common pleas, not as clearly as if they had been familiar with the language in which they spoke, but with sufficient clearness, we think, to remove all doubt from the subject.   There is at least no testimony which, as against the writing itself, will sustain a finding that it was not a last will and testament.   It was prepared by direction of, and executed by, a man possessed of full testamentary capacity, and subjected to no influence whatever.   He understood its provisions and intended it to be his will.   In name, in form, and as a disposition of his estate to take effect after his death, it is a will, and the jury should not have been permitted to find otherwise.   The learned judge instructed the jury that there was no sufficient evidence of undue influence.   He should have gone further and affirmed the plaintiff's third and fourth points.

The assignments of error are sustained, and the judgment is reversed.