MARY FLEMING *vs.* JOHN R. MORRISON & another.

Essex.   November 1, 1904. — December 15, 1904.

Present: KNOWLTON, C. J., LATHROP, BARKER, HAMMOND, & LORING, JJ.

*Will,* Execution and attestation.  *Evidence,* Extrinsic affecting writings.

If a man, having signed an instrument purporting to be his will leaving all his property to a certain woman, and having acknowledged it as his will before one attesting witness intending not to complete the instrument or to make it a valid will but merely to use it to induce the woman named as legatee to sleep with him, afterwards decides to make the instrument a valid will and with such intention acknowledges it as his will before two other witnesses who attest it as such, the instrument cannot be allowed as a will, as it has been acknowledged before and attested by only two witnesses when the attempting testator had the intention of making it his will.

The statements in an instrument purporting to be a will, that it was executed by the person named as testator as his will and was declared by him to be such in the presence of three witnesses whose names are subscribed, can be contradicted by oral testimony showing that the person named as testator, when he signed the instrument in the presence of one of the three witnesses and when that witness signed, did not intend to make the instrument a valid will by acknowledging it before two other witnesses and having it attested by them.

APPEAL from a decree of the Probate Court for the county of Essex made on April 27, 1903, allowing a certain instrument as the last will and testament of Francis M. Butterfield, late of Lynn.

The case was heard by *Loring,* J., who found that the testator was of sound mind, that no undue influence was exercised, and that the will was executed properly.   At the request of the contestants, he reported the case for determination by the full court.

The report contained the following findings of the justice referred to in the opinion :

"I find that on or about May 18, 1901, Francis M. Butterfield called upon Sidney S. Goodridge and requested him to draw up his will, leaving all his property to the Mary Fleming named in the instrument admitted to probate as the will of said Butterfield. Thereupon said Goodridge drew up the said instrument, said Butterfield signed it, and said Goodridge attested and subscribed said instrument as a witness to the signature of said Butterfield.   Before Butterfield and Goodridge parted, Butterfield told Goodridge that this was a 'fake' will, made for a purpose.

" I find by the evidence in this case that said Butterfield meant by this that he did not intend to complete the instrument by having it attested and subscribed by at least two other witnesses, and that the purpose referred to by him was to induce said Fleming to allow him, said Butterfield, to sleep with her. Afterwards said Butterfield determined to complete the execution of his will, and for that purpose he produced the instrument before the other two attesting witnesses, Bryant and Cheney, told them it was his will, that the signature was his signature, and asked them to attest and subscribe it as witnesses. Goodridge, Bryant and Cheney were all competent witnesses.

"I find that the words appointing Mary Fleming as 'administratrix' were written on the instrument after it was attested and subscribed by Bryant and Cheney."

The instrument offered as a will was as follows:

" Be it remembered that I, Francis M. Butterfield of Lynn, County of Essex *of Massachusetts* in the Commonwealth of Massachusetts, being of sound mind and memory, but knowing the uncertainty of this life, do make this my last will and testament, this 18th day of May, 1901.

" After the payment of my just debts and funeral charges, I bequeath and devise as follows:

" To Mary Fleming of Lynn State of Massachusetts all of My Possessions at My death of all Real *est* and personal property and all that May Come to Me after My death.

                              " Francis M. Butterfield.

" I appoint Mary Fleming my Administratrix.

" In testimony whereof I hereunto set my hand and in the presence of three witnesses declare this to be my last will this 18th day of May 1901 day of 1901 in the year one thousand and Nine hundred and one.

" On this 18th day of May *day of May* A. D. 1901 Lynn State of Massachusetts *Massachusetts*, signed the foregoing instrument in our presence, declaring it to be his last will : and as witnesses thereof we three do now, at his request, in his presence, and in the presence of each other, hereto subscribe our names.

                              " Sidney S. Goodridge,
                                Eron J. Bryant,
                                Zella J. Cheney."

*W. B. Murphy & H. T. Lummus,* (*J. W. Berry* with them,) for the appellee. Witnesses attest the formal act of signing, not the intent. See *Osborn* v. *Cook,* 11 Cush. 532; *Baxter* v. *Abbott,* 7 Gray, 71, 82. A deed signed and attested with the expectation of never completing it by delivery becomes a valid attested instrument if delivered. If the *animus testandi* exists when a paper acquires vitality by the attestation of the third witness the instrument is a valid will, whatever the state of mind of the testator was before that time.

*H. P. Harriman & J. F. Neal,* for the appellants.

LORING, J. All the rulings asked for at the hearing have been waived, and the only contention now insisted upon by the contestants is that on the finding made at the hearing the proponent of the will has failed to prove the necessary *animus testandi.* We are of opinion that this contention must prevail.

The finding that before Butterfield and Goodridge "parted" Butterfield told Goodridge that the instrument which had been signed by Butterfield as and for his last will and testament and declared by him to be such in the presence of Goodridge, and attested and subscribed by Goodridge as a witness, "was a 'fake' will, made for a purpose," is fatal to the proponent's case. This must be taken to mean that what had been done was a sham. This is not cured by the further finding that what Butterfield meant by this was "that he did not intend to complete the instrument by having it attested and subscribed by at least two other witnesses, and that the purpose referred to by him was to induce said Fleming to allow him, said Butterfield, to sleep with her."

This is not a finding that Butterfield intended to sign the instrument before Goodridge as and for his last will and testament, leaving the further execution to depend on future events. Much less is it a finding that Butterfield changed his mind after he had signed and had had Goodridge attest and subscribe the instrument. The whole finding taken together amounts to a finding that Butterfield had not intended the transaction which had just taken place to be in fact what it imported to be, that is to say, a finding that when Butterfield signed the instrument and asked Goodridge to attest and subscribe it as his will he did not in fact then intend it to be his last will and testament but intended to have Mary Fleming think that he had made a will in her favor to induce her to let him sleep with her.

We are of opinion that it is competent to contradict by parol the solemn statements contained in an instrument that it is a will, that it has been signed as such by the person named as the testator and attested and subscribed by persons signing as witnesses. *Lister* v. *Smith*, 3 Sw. & Tr. 282. *Nichols* v. *Nichols*, 2 Phill. 180. *In the Goods of Nosworthy*, 11 Jur. (N. S.) 570. For similar cases as to wills, see *In the Goods of Hunt*, L. R. 3 P. & D. 250, where it was held that it could be shown by parol that the instrument executed was executed by mistake; and *Hubbard* v. *Alexander*, 3 Ch. D. 738, where it was held that one of two codicils duly executed was intended to be a duplicate. It was lately held by this court that a written agreement, duly executed, could be shown to have been delivered on a condition. *Elastic Tip Co.* v. *Graham*, 185 Mass. 597. And see the cases there cited.

" The momentous consequences of permitting parol evidence thus to outweigh the sanction of a solemn act are obvious. It has a tendency to place all wills at the mercy of a parol story that the testator did not mean what he said," in the words of Sir J. P. Wilde, in *Lister* v. *Smith*, 3 Sw. & Tr. 282, 288. In fact that learned judge went so far as to say that it was so dangerous a kind of evidence and that it was so difficult to impress on a jury " the enormous weight which attaches to the document itself as evidence of the *animus* with which it was made," that although he was prepared in that case to act on the finding of the jury, he was " far from saying that the court will in all cases repudiate a testamentary paper simply because a jury can be induced to find that it was not intended to operate as such."

We cannot accede to the argument of the proponent that a will is like a deed where witnesses are required to the signature of the grantor. In that case it is enough that the instrument is complete when delivered. But in case of a will there is no delivery of the instrument. The *punctum temporis* in case of a will is when it is signed, or, having been signed previously, when the signature is acknowledged in the presence of three or more witnesses. And where that is done before each witness separately, (as it may be done in this Commonwealth, *Chase* v. *Kittredge*, 11 Allen, 49,) the *animus testandi* must exist when it is signed or acknowledged before and attested and subscribed by each of the necessary three witnesses. If this is not done the statutory requirements have not been complied with.

Assuming that the acknowledgment *animo testandi* of a signature not originally made with that *animus* is enough, the will in the case at bar would have been duly executed had Butterfield subsequently acknowledged the instrument before three in place of two additional witnesses. But he did not do so. The instrument having been acknowledged and attested and subscribed by two witnesses only is not a valid will within R. L. c. 135, § 1.

It has not been argued that the want of the necessary *animus testandi* is not open under the terms of the first reason of appeal. Although the question here discussed was not raised at the hearing by the rulings requested by the contestants, it was considered by the presiding justice and is presented by the ruling made on his finding. The case does not come within *Holbrook* v. *Young*, 108 Mass. 83, relied on by the proponent.

> *Decree to be entered reversing decree of Probate Court, and disallowing the instrument as the will of Butterfield.*