# Richmond

## FREDERICK J. FAWCETT v. RICHMOND LEATHER MANUFACTURING COMPANY.

November 13, 1930.

Present, Prentis, C. J., and Campbell, Hudgins, Gregory and Browning, JJ.

520

*Hunton, Williams, Anderson & Gay* and *Irvin G. Craig*, for the plaintiff in error.

*R. E. Scott* and *Christian & Lamb*, for the defendant in error.

GREGORY, J., delivered the opinion of the court.

In this opinion we will refer to the plaintiff in error as the plaintiff, and the defendant in error as the defendant.

This action was originally brought on October 15, 1918. The plaintiff proceeded by notice of motion for judgment against the defendant for damages for a breach of contract. On March 25, 1919, the plaintiff obtained a verdict against the defendant for $3,905.95. A judgment was entered upon the verdict on May 13, 1919, and from that judgment a writ of error was granted by this court. This court reversed the judgment of the trial court and remanded the case for a new trial. (*Richmond Leather Manufacturing Company* v. *Frederick J. Fawcett*, 130 Va. 484, 107 S. E. 800.) The case was heard again in the trial court and the jury failed to agree; then the defendant, upon the third trial, interposed a demurrrer to the evidence, in which the plaintiff joined. The demurrer was sustained and final judgment in favor of the defendant was entered. To that judgment the present writ of error was granted.

The evidence introduced before the trial court upon the first trial is the identical evidence now before us.

In substance it discloses that the plaintiff was a commission merchant with his place of business in Boston, Mass. The defendant was a leather manufacturer with its place of business in Richmond, Va. The plaintiff had entered orders with the defendant for large numbers of rawhide shoe laces. The defendant accepted the orders and agreed to make deliveries of certain numbers of the laces each week. The laces were to be resold by the plaintiff and ultimately were to be used in army shoes for the soldiers in the late war. The defendant knew of this fact. The defendant from the very beginning failed to promptly deliver the laces as it had agreed to do. Delayed deliveries, however, were made, accepted, and paid for by the plaintiff in the course of dealing. The plaintiff was constantly demanding better deliveries and the defendant constantly making excuses but continued in its default in promptly making the deliveries. The plaintiff made trips to Richmond and had interviews with the defendant's agents for the purpose of obtaining deliveries in accordance with the agreement. On November 3, 1917, the plaintiff went to Richmond, and he and the defendant, through Lyons, its secretary and treasurer, agreed that shipments of the laces should be pro-rated among all of the defendant's customers. Later the parties acted under this agreement. Deliveries were made by the defendant and accepted by the plaintiff and paid for after this agreement, and this course of dealing continued until December 11, 1917, as to thirty-six inch laces and to January 23, 1918, as to the thirty inch laces. By letter of December 11, 1917, the plaintiff notified the defendant to deliver no other thirty-six inch laces and by another letter of January 23, 1918, the plaintiff notified the defendant to deliver no other thirty inch laces. After these letters, there were no shipments of either type of laces. At the time the defendant was notified to discontinue the deliveries, it was then in position

to make deliveries of the undelivered balances. The facts narrated are not controverted.

This action was brought on account of the failure of the defendant to deliver a large number of the laces which it had agreed to deliver under the orders and which had not been delivered. No damage was claimed for the delays on the deliveries actually made. The plaintiff sought to recover only the profits he would have made on the undelivered balances on the original orders.

The defendant's whole defense in the trial court was built around the question of waiver. It then claimed that the plaintiff had waived his right to sue for profits on the undelivered balances, first, because he had accepted and paid for delayed deliveries and second, because the understanding reached on November 3rd, constituted an express waiver.

The fact that the plaintiff accepted delayed deliveries and paid for them was admitted by the plaintiff. The fact that there existed a mutual understanding that the shipments were to be, from November 3rd, pro-rated among all the customers as testified to by witness Lyons, secretary and treasurer of the defendant company, was not denied. Naturally, under this situation in the court below, the defendant requested instructions based on his defense of waiver, which had been established by the evidence, first, by the course of dealings between the parties, and second, by the express agreement of November 3rd. But the request of the defendant in this regard was refused by the court. The further request of the defendant that the plaintiff's instructions be qualified so as to embrace the defense of waiver was also refused. The case was submitted to the jury on the evidence and the court's instructions as to the rights of the plaintiff under the original contract. The instructions wholly ignored the defense of waiver, notwithstanding the fact that it had been, at that time, established by the evidence.

The trial resulted in a verdict for the plaintiff for $3,905.95, and final judgment was entered thereon, on May 13, 1919.

Afterwards the defendant applied for and was granted a writ of error.

When the case reached this court on the former writ of error (130 Va. 484, 107 S. E. 800), the defendant insisted that the plaintiff had, as a matter of law waived his right to sue for damages and in deciding the case this court unqualifiedly so held in its opinion. This court determined that the plaintiff had accepted and paid for delayed deliveries and decided that a party, who under such circumstances accepts and pays for delayed deliveries, waives his right to sue for damages on account of prior breaches.

It was further decided that by his waiver the plaintiff kept the contract alive in his favor and against himself and that he could only sue for a breach thereafter occurring. It was determined that no breach thereafter occurred.

On pages 494 and 495 of 130 Va., 107 S. E. 800, 804, of the opinion, is this statement:

"In addition to his letters, plaintiff made various trips to Richmond to see defendant in person, and urged expedited delivery. The defendant's response to this stream of complaints by letter and telegram, was a series of explanations and assurances of better service. At no time does it appear to have denied the plaintiff's assertions with respect to the specific deliveries to which he maintained that he was entitled. At one time the cause of delay is laid at the door of labor troubles, at another time to difficulty in procuring materials, and at still another to transportation difficulties, one explanation following another in monotonous iteration. Nevertheless, the plaintiff did not treat the defendant's delayed deliveries as breaches of the contract entitling him to refuse to accept such deliveries and bring his actions for damages. During the months

of August, September, October, November, December and a part of January, he accepted these deliveries, and paid for same without ceasing, however, to insist upon expedited service."

Again on page 498 of 130 Va., 107 S. E. 800, 805, this is said:

"Subsequent to the interview of November 3rd, and the letter of December 11th, the Leather Company made a number of deliveries of seven-thirty-second laces.

"From the foregoing citations from the record, and many others that might be made, it very clearly appears that the plaintiff time and again accepted and paid for deliveries that he might have refused, though all the while insisting upon better deliveries. This acceptance of delayed deliveries continued to January 21, 1918.

"What was the effect upon the plaintiff's rights of this action on his part? Ordinarily, with respect to contracts for the sale and delivery of manufactured articles, time is not of the essence, but when by contract one is entitled to deliveries in an agreed amount at a specified time, he is not compelled to accept a substituted performance. He has an ample legal defense, but if he does not stand upon his rights, and accepts such performances and pays for same, a new status, or relationship, between the parties is created, and the buyer loses a measure of his rights by his voluntary action in this respect."

And quoting with approval from the case of *Reid* v. *Field*, 83 Va. 26, 1 S. E. 395.

" '* * * The plaintiff had the right to have performance on the part of the seller according to the very terms of the contract. * * * But instead of standing firmly on his ample legal defense, the defendant in error waived it, by accepting a substituted performance, and by his subsequent promise, and the suit was brought, not on the original executory contract, but on the subsequent promise—

the executed contract.' The court cites approvingly, Benjamin on Sales, with respect to waiver: 'No authority is needed,' says Mr. Benjamin, 'for the proposition that the party in whose favor a condition has been imposed can expressly waive it.' Benjamin on Sales, section 566. Hence, says the court, 'it is a recognized principle that every one may waive a right intended for his own benefit, if it can be relinquished without detriment to the community at large.'

"To the above effect the court also cites Hare on Contracts: 'Waiver is a renunciation of some rule which invalidates a contract, but which, having been introduced for the benefit of the contracting party, may be dispensed with at his pleasure.' Hare, 272.

"Concluding, the court said: 'In this case, the defendant in error, after the alleged breach of the original agreement by the plaintiff in error (Reid), by accepting a substituted performance, and by his subsequent promise, waived the protection given by law and reliquished his right to rely upon the rule provided for his protection.' *Id.*, 83 Va. page 33, 1 S. E. 400.

"In the case, *supra*, the defendant was under no compulsion to accept a substituted performance, but having accepted it, and paid for same, his own voluntary action effected a waiver of a benefit for which he had stipulated, and to which he was entitled."

After quoting with approval from other Virginia decisions, this court proceeded, on pages 505–506 of 130 Va., 107 S. E. 800, 808:

"The principles announced in the Virginia cases cited are very plain, and may be readily applied to the case in judgment. Waiver applies to any right conferred by law or contract. This right may, or may not, be exercised by the person holding it. Being for his benefit, no one is concerned in its relinquishment save himself. Hence the

owner of such right, as stated in *Eichelbaum* v. *Klaff*, (125 Va. 98, 99 S. E. 721) 'can waive it expressly either in writing, or by parol, or impliedly by inconsistent conduct'—that is to say, as stated in *Miller & Co.* v. *Lyons*, *supra* (113 Va. 275, 74 S. E. 194), 'a covenanter may by his conduct so lull his covenantee into security as thereby to estop himself from the exercise of a right for which he had contracted.' An actual waiver is a completed performance. It is doing what one wills with his own. Hence, there is no question of consideration involved. In the case of *Reid* v. *Field, supra*, the latter was under no compulsion to accept a substituted performance. Of his own volition he accepted a delayed delivery, and paid for the same, thereby waiving a right conferred by law: * *."

Again on page 506 of 130 Va., 107 S. E. 800, 808, the court says:

"But the situation is entirely different when the right is actually waived in any one of the modes recognized by the Virginia authorities. When a contracting party who is entitled to rescind a contract and sue for damages by reason of the defaults of the other, accepts a delayed delivery and pays for same, he cannot rely upon antecedent breaches to support a rescission. If at a later stage of the relations between the parties he wishes to exercise the right of rescission, that right must rest upon a new breach by the other contracting party. A series of dealings in which delayed deliveries are accepted and paid for, and further deliveries demanded, justifies the party in default, in the absence of anything to the contrary, in concluding that the contract will not be rescinded on account of such delayed deliveries without notice. Under such circumstances, rescission without notice on account of delayed delivery would be in derogation of the accustomed course of dealing between the parties. *Miller* v. *Lyons, supra;*

*Norfolk Hosiery Co.* v. *Aetna Co., supra,* 124 Va. p. 237, 98 S. E. 43.

"If failure to deliver according to the terms of a contract gives the right to rescind, acceptance of a delayed delivery and payment therefor, standing alone, is a waiver of the right and an election to hold the defaulting party to his contract. By his waiver, the party entitled to rescission keeps the contract alive against the party in default, but he also keeps it alive in his favor and against himself, and neither can sue save for a breach thereafter occurring. *Norfolk Hosiery Co.* v. *Aetna Co., supra,* 124 Va. p. 237, 98 S. E. 43. This revival, so to say, of the contract, enables the party in default not only to complete the contract, if so advised, notwithstanding the previous default, but also to take advantage of any supervening circumstances which would justify him in declining to complete. *Id.,* 124 Va. page 237, 98 S. E. 43.

"The status effected by the waiver is a voluntary creation of the party to rescind. A legal alternative is presented to him. He can stand upon his legal rights, treat the contract as ended, and bring action for damages against the party in default; or he can accept the delayed delivery, pay for same, and thereby keep the contract alive, alike for himself and his adversary. In *Eichelbaum* v. *Klaff, supra,* the plaintiff, after waiving the original date of delivery, thereafter wrote to the defendant that unless the deliveries were completed by the 20th or 23rd of July, he would cancel the contract and sue for damages. He waived this last date by accepting subsequent deliveries. He was not allowed thereafter to refuse to accept further deliveries, and terminate the contract without notice. Every case with respect to the conclusion, or derivation, of waiver from the dealings of the parties must depend upon its own facts."

From the foregoing expressions, which are taken from the former opinion of this court (130 Va. 484, 107

S. E. 800), it has been judicially determined, first, that the plaintiff accepted and paid for delayed deliveries; second, that such conduct on his part, standing alone, constituted a waiver by him of his right to sue for damages for prior breaches. This is the law of this case and we are bound by it.

After the reversal and remand of the case, a new trial was had in the lower court and by mutual agreement between the plaintiff and the defendant it was stipulated that the case should be tried upon the same evidence that was produced in the former hearing of the case in this court; that the defendant would demur to the evidence and the plaintiff would join in the demurrer. Upon the joinder, it was agreed that the jury should find the same verdict in favor of the plaintiff and in the same amount ascertained in the former verdict, to-wit, $3,905.95, with interest from March 25, 1919, subject to the opinion of the court upon the demurrer to the evidence. The stipulation is as follows:

"It is stipulated that upon the calling of this case for trial the jury shall be sworn to try the issues joined;

"And thereupon, the plaintiff to maintain the issues on his part shall introduce the evidence and exhibits therein referred to, produced in the trial of this cause which commenced on the 21st day of March, 1919, as set forth in the printed record in the Supreme Court of Appeals of Virginia in the case of *Richmond Leather Manufacturing Company* v. *Frederick J. Fawcett*, Record No. 530, together with the interrogatories and answers thereto appearing in said record.

"And the defendant to maintain the issue on its part shall introduce the evidence and exhibits therewith produced in said trial and likewise set forth in said record.

"That thereupon, the defendant will demur to the evidence assigning its grounds of demurrer in writing, in which demurrer plaintiff shall join. Upon such joinder,

the jury shall find a verdict for the plaintiff in the amount ascertained in the former verdict, to-wit, the sum of three thousand nine hundred and five dollars and ninety-five cents ($3,905.95), with interest from the 25th day of March, 1919, until paid, subject to the opinion of the court upon the demurrer to the evidence."

The jury, subject to the ruling of the court on the demurrer to the evidence, found in favor of the plaintiff.

After due consideration of the demurrer to the evidence the trial court sustained it and entered final judgment thereon for the defendant. The plaintiff applied to this court for a writ of error (which was granted), assigning as error the action of the trial court in sustaining the demurrer to the evidence and entering final judgment for the defendant.

It is conceded by counsel for both parties that the law of the case was settled by the former decision of this court.

Our primary duty is to pass upon the ruling of the trial court in sustaining the demurrer to the evidence.

The plaintiff relies upon the following expressions in the opinion at pages 509 and 510 of 130 Va., 107 S. E. 800, 809, in support of his contention that the court has decided that there was a conflict in the evidence:

"The court instructed the jury fully and accurately as to the rights of the plaintiff under the original contracts, unmodified and unaffected by the course of dealing between the parties, but these instructions wholly ignored the evidence tending to show a waiver of his rights by the voluntary action of the plaintiff.

"An instruction should have been given defining waiver, how effected, and its consequences, and instructing the jury as to their duty, should they determine from the evidence that a waiver had actually taken place. Instruction number 4, in the record, tendered by the defendant and rejected, would be a proper instruction if accompanied with a pre-

ceding paragraph defining waiver and how the same may be effected. And further, it would be better to add to instructions 1 to 4, for the plaintiff, the words 'unless the jury shall further believe from the evidence that the plaintiff waived his rights as set out in the instructions for the defendant,' or words to that effect.

"With respect to the alleged contract not to sue, conceding that the correct version of same is found in the testimony of Lyons, it is not considered that this contract is an enforceable undertaking, but all that passed in that connection between Lyons and Fawcett is proper matter for the consideration of the jury in the determination of the inquiry of waiver.

"For the reasons stated, we are of opinion to set aside the verdict and judgment under review, and award a new trial, to be proceeded with not in conflict with the views expressed in this opinion."

■■ The plaintiff construes this portion of the opinion as necessarily meaning that there was a conflict in the evidence on the question of waiver which should have been submitted to a jury, and contends that if this were not true, this court would have, under section 6365 of the Code 1919, entered final judgment for the defendant instead of remanding the case to the trial court.

The defendant contends that this court held in its opinion that the evidence then before it, which is the identical evidence now before us, established, as a matter of law, a waiver by the plaintiff of the right to bring this action for damages for a breach of the contract.

In applying the rule of the "law of the case" it is essential that we consider the former opinion as a whole. We cannot reject the major portion, which discusses waiver and holds that the plaintiff has waived his right to sue and accept what is said on pages 509 and 510 of 130 Va., 107 S. E. 800, 809 (quoted above) to the exclusion of what had been previously determined.

The former opinion must be interpreted in the light of the proceedings in the first trial and its results, as previously narrated, and when so interpreted, there is no inconsistency in it.

Counsel's contention that this court has decided by its former opinion that there is a conflict in the evidence is not well taken. It is not stated in the opinion that there is a conflict in the evidence. The evidence may be searched from the beginning to the end and the fact that the plaintiff accepted and paid for delayed deliveries is nowhere denied or controverted, but admitted by the plaintiff himself. There being in fact no conflict in the evidence, this court certainly would not have based a reversal and remand of the case on something that did not exist.

The evidence of Lyons for the defendant which tended to support an express waiver of the right to sue for defaults in the deliveries has not been denied. When the case was before the trial court the last time, the plaintiff had his opportunity to controvert this evidence but failed to do so. He cannot on this writ of error contend that Lyons' testimony should be given no consideration on the demurrer to the evidence. His testimony must now be taken as true, it never having been denied or contradicted. *Barnes* v. *Hampton*, 149 Va. 743 and 744, 141 S. E. 836.

The plaintiff now contends that he was not in possession of all of the material facts and for this reason he could not have waived his rights. Under our view of the case, it is immaterial whether he knew the facts or not, because this court upon the former hearing decided upon the evidence then in the record that he had waived his rights. This is the law of the case. Upon the same evidence now before the court we cannot, under the rule, inquire into what does or does not constitute a waiver.

The effect of the refusal of the trial court to instruct the jury on the question of waiver was, that all of the

evidence bearing on that question was irrelevant and immaterial. This evidence, under the court's erroneous theory of the case, was removed from the consideration of the jury and in effect ruled out of the case. The jury, under the instructions, could not have considered it. This being true, it was plain that there had been no trial in the lower court on this issue.

Upon the former writ of error it was necessary to remand the case, because there had not been a fair trial upon the issue of waiver. The ends of justice demanded that the case be remanded upon this issue.

When the ends of justice demand it, this court has the discretion to remand a case for a trial *de novo*, or upon questions or points which may be designated by it.

The trial court had proceeded upon a false theory of the case. It had held that the defense of waiver did not apply. This court in its former opinion, from the uncontroverted evidence, held that the defense of waiver did apply and that the plaintiff had waived his right to claim the damages he now seeks to recover. The evidence supporting the waiver was before this court unchallenged and not disputed, because the plaintiff, under the trial court's ruling, had not had his opportunity to meet and rebut it. The case was remanded and he was given his day in court on this vital issue. He was given his opportunity to meet and overcome the evidence on this issue, but instead of doing so, he joined in a demurrer to the evidence without introducing any additional proof. The case now being before this court upon the same issue and upon the same evidence, though upon a demurrer to the evidence, this court must necessarily enter final judgment affirming the ruling of the lower court in sustaining the demurrer to the evidence. Burks, Pleading and Practice, section 264, pages 497 and 498.

This court in the case of *Carper's Admr.* v. *Norfolk & Western Railroad Co.*, 95 Va. 43, 27 S. E. 813, dealt with

a similar situation. There, when the case was first heard in this court (*N. & W. R. R. Co.* v. *Carper*, 88 Va. 556, 14 S. E. 328), it was held that there was no evidence of the defendant's negligence, but if it were negligent the plaintiff could not recover because he had been guilty of contributory negligence as a matter of law. The case was reversed and remanded for a new trial. When the case was tried the second time in the trial court, the plaintiff introduced no new or additional evidence but did introduce the same evidence he had introduced on the first trial. The defendant demurred to the evidence and its demurrer was sustained. A writ of error was granted and upon the second hearing in this court (*Carper* v. *N. & W. R. R. Co.*, 95 Va., 43, 27 S. E. 813), it was held that the law of the case (that in no event could the plaintiff recover), was settled on the first writ of error. It was further held that the court was bound by the law of the case as decided upon the first writ of error and the trial court's action in sustaining the demurrer was affirmed.

This authority is sufficient to sustain the procedure adopted in the instant case.

The trial court's action in sustaining the demurrer to the evidence is affirmed.

*Affirmed.*